775 A.2d 1273

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ANDRE JOHNSON, DEFENDANT–APPELLANT.

Argued January 17, 2001—Decided July 10, 2001.

609

610

*J. Michael Blake*, Assistant Deputy Public Defender, argued the cause for appellant (*Peter A. Garcia*, Acting Public Defender, attorney).

*John N. Shaughnessy*, Assistant Prosecutor, argued the cause for respondent (Glenn Berman, Middlesex County Prosecutor, attorney; *Simon Louis Rosenbach*, on the letter in lieu of brief).

*Catherine A. Foddai*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*John J. Farmer, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

While executing a "no-knock" search warrant at a residential apartment, the police seized evidence of illegal drug activity that led to defendant's arrest and conviction. As the name implies, a no-knock warrant authorizes police officers to enter a home or business without first knocking and announcing their presence. The trial court denied defendant's motion to suppress the evidence seized at the apartment. The Appellate Division affirmed. We hold that the record did not adequately justify the issuance of a no-knock warrant in this case. We are thus compelled to set aside defendant's conviction.

I.

These are the pertinent facts. On July 24, 1997, a confidential informant, deemed reliable by the police, informed them that one

Jay Cancell had stated that his aunt, Sandra Figaroa, was distributing cocaine and heroin out of her apartment. Cancell told the informant that Figaroa was selling the drugs for her boyfriend, defendant Andre Johnson, whose nickname was "Earthquake." According to Cancell, defendant lived with Figaroa in the apartment, which is located within 1000 feet of a school in North Brunswick. Cancell led the informant to the apartment where Figaroa greeted them and stated that defendant had gone to New York City to pick up one hundred bags of heroin and would be back later that night.

The following day the police conducted a controlled buy of heroin at Figaroa's apartment. The police supplied the informant with $40 and kept him under surveillance as he entered the dwelling. About ten minutes later, the informant met with the police to turn over two bags of a substance that he had purchased inside the apartment. The substance tested positive for heroin. The informant told the police that Figaroa had stated that defendant did not like selling drugs out of a residential dwelling because such activity attracted the attention of law enforcement officers.

On July 30, 1997, Detective Anthony Falcone of the North Brunswick Township police department applied to the municipal court for a warrant to search Figaroa's apartment. In an oral application recorded in the judge's chambers and later transcribed, Detective Falcone described to the court the controlled buy that the police had undertaken with the aid of the informant. (In addition to his oral testimony, Detective Falcone submitted a written certification outlining his credentials and prior experience in conducting drug investigations.) The detective also informed the court that about two months earlier a different informant had told him that a black male named Earthquake was selling large amounts of heroin and cocaine in certain housing projects in New Brunswick. Although she was unsure of Earthquake's address, the informant knew that Earthquake did not live in New Brunswick.

Detective Falcone concluded his recitation of facts by stating "[t]herefore your Honor I'm requesting a no knock search warrant for officers['] safety and it means that the narcotics can be easily [ ] destroyed and be served within twenty four hours." That one sentence contains the only specific reference to the no-knock entry in the detective's testimony. In issuing the warrant, the court stated, "I have reviewed the testimony and I feel that in this case there is probable cause to show that there is some type of drug activity going on at [Figaroa's address] in North Brunswick and I'm going to issue the search warrant." The court did not specifically comment on the no-knock provision.

The warrant was prepared on a pre-printed form containing certain blank spaces in which the applicant or issuing judge had to describe the place to be searched and the items to be seized, in addition to other pertinent information. The form required the judge to check off one of two boxes to indicate that the police were authorized to execute the warrant either "with," or "without, first knocking and identifying the officers as police officers and the purpose for being at the premises[.]" There was also a space to describe the hours between which the police were authorized to execute the warrant. In pre-printed language, the warrant provided that it had to be executed within ten days from the date it was issued.

The record does not indicate whether Detective Falcone filled in the blank spaces on the warrant form prior to arriving at the court or whether the court completed the form after it heard the detective's testimony. In any event, on the completed warrant executed by the police the box authorizing the police to enter the premises without knocking had been checked off, and "24 HRS" had been written in the space indicating the permissible hours of execution. Based on those filled-in portions of the warrant, the police were authorized to execute it at any time within the ten-day period, day or night, without warning or notice to Figaroa or to any other occupants of her apartment.

Officers from the North Brunswick and New Brunswick police departments and the Middlesex County Prosecutor's Office executed the warrant at about 8:30 p.m. on July 31, 1997. They did not knock or announce their presence, but instead entered the apartment by force. After entering, the officers saw Figaroa run into the bathroom and lock the door behind her. They then forced open the bathroom door and observed Figaroa discard two glassine packets into the toilet. The officers retrieved the two packets, the contents of which subsequently tested positive for heroin.

The police arrested Figaroa and then located defendant in the doorway of a bedroom. The officers secured defendant with handcuffs when he became uncooperative. They searched the premises and found heroin, cocaine, cash suspected to be drug proceeds, and various drug paraphernalia. The police also recovered a purse that contained information revealing that Figaroa's actual name is Sandra Alfonso. A Middlesex County grand jury charged defendant and co-defendant Alfonso with numerous drug offenses, including possession of heroin with intent to distribute within 1000 feet of school property.

Defendant thereafter filed a *pro se* motion to suppress the evidence seized at the apartment, arguing in his motion papers that in "executing the warrant in the average case a rule of common law that originated in arrest cases suggest[s] that police officers must knock on the door of the premises to be searched and must announce their identity and purpose before using force to enter the location[.]" At a subsequent suppression hearing, however, defense counsel did not advance that argument. Instead, counsel argued that there had been insufficient probable cause for the municipal court to have issued the warrant. The trial court rejected that argument. The court did not address defendant's argument in respect of the no-knock provision.

In March 1998, defendant pleaded guilty to one count of possession of heroin with intent to distribute within 1000 feet of school property. Defendant acknowledged that he had possessed heroin at a location within 1000 feet of a school and that he had intended

to distribute the drug to other persons. The court sentenced defendant to a five-year term of imprisonment with a three-year period of parole ineligibility.

Before the Appellate Division, defendant argued that there was insufficient support in the record to justify the issuance of a no-knock warrant. In an unreported opinion, the Appellate Division affirmed the trial court's disposition. The panel concluded that "Detective Falcone's testimony in support of the application for a search warrant set forth sufficiently specific facts to justify the issuance of the 'no-knock' warrant." In the court's view, defendant had failed to overcome the presumption of validity of the no-knock provision. This Court granted defendant's petition for certification. 165 *N.J.* 486, 758 *A.*2d 646 (2000). The Court also granted the motion of the Attorney General for leave to appear as *amicus curiae*. (For convenience we will refer to the State and the Attorney General collectively as the State.) We now reverse.

## II.

The requirement that law enforcement officers knock and announce their presence before entering a dwelling predates our federal and State Constitutions. As a long-standing component of the common law, the "knock-and-announce" rule reflects "the ancient adage that a man's house is his castle." *Miller v. United States,* 357 *U.S.* 301, 307, 78 *S.Ct.* 1190, 1194, 2 *L.Ed.*2d 1332, 1337 (1958). The rule was pronounced about 400 years ago in *Semayne's Case,* 79 *Eng. Rep.* 194 (K.B.1603), although some commentators trace its legal origin to an earlier period in the thirteenth century, around the time of the Magna Carta. *Wilson v. Arkansas,* 514 *U.S.* 927, 932 n. 2, 115 *S.Ct.* 1914, 1917 n. 2, 131 *L.Ed.*2d 976, 981 n. 2 (1995).

Against that common-law backdrop, the Fourth Amendment of the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and

particularly describing the place to be searched, and the papers and things to be seized.

The text of Article I, paragraph 7 of the New Jersey Constitution is nearly identical to the Fourth Amendment. Within the framework of that amendment, the United States Supreme Court has determined "that the reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announce[ ] their presence and authority prior to entering." *Wilson, supra,* 514 *U.S.* at 931, 115 *S.Ct.* at 1916, 131 *L.Ed.*2d at 980. Although the Court has noted that not every entry must be preceded by an announcement, it has held squarely that the method of an officer's entry into a dwelling "is an element of the reasonableness inquiry under the Fourth Amendment." *Id.* at 934, 115 *S.Ct.* at 1918, 131 *L.Ed.*2d at 982.

One noted commentator has explained the rationale undergirding the knock-and-announce rule:

The constitutional requirement of announcement serves a number of most worthwhile purposes: (i) "decreasing the potential for violence"; (ii) "protection of privacy"; and (iii) "preventing the physical destruction of property." As to the first of these, it has been cogently noted that an "unannounced breaking and entering into a home could quite easily lead an individual to believe that his safety was in peril and cause him to take defensive measures which he otherwise would not have taken had he known that a warrant had been issued to search his home." As to the second, notice minimizes the chance of entry of the wrong premises by mistake and the consequent subjecting of innocent persons to "the shock, fright or embarrassment attendant upon an unannounced police intrusion." ... The third purpose is equally valid, for quite obviously a person should ordinarily "be allowed the opportunity to voluntarily admit the officer into his home" instead of suffering damage to his property.

[2 Wayne R. LaFave, *Search and Seizure* § 4.8(a) at 599–600 (4th ed.1984) (footnotes omitted).]

As indicated, the requirement that law enforcement officers first knock and announce their presence before entering a dwelling is not absolute. "The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Wilson, supra,* 514 *U.S.* at 934, 115 *S.Ct.* at 1918, 131 *L.Ed.*2d at 982. Moreover, "although a search or seizure of a dwelling might be constitutionally defective if police officers enter

without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry." *Id.* at 936, 115 *S.Ct.* at 1919, 131 *L.Ed.*2d at 984.

Our State jurisprudence generally has mirrored federal case law in respect of the knock-and-announce rule. In *State v. Fair,* 45 *N.J.* 77, 86, 211 *A.*2d 359 (1965), this Court succinctly summarized the rule and its three main exceptions:

> Ordinarily the common law requires that peace officers may break into a dwelling house for the purpose of making an arrest only after demanding admittance and explaining their purpose. Compliance with the general mandate of such antecedent conduct is not required, however, where: (1) immediate action is required to preserve evidence; (2) the officer's peril would be increased; or (3) the arrest would be frustrated.
>
> [ (internal citations omitted).]

Those exceptions would seem to swallow the rule, particularly in drug investigations in which there are often grounds to suspect that immediate action is required to preserve evidence, protect the safety of police officers, or effectuate a successful arrest. However, the Supreme Court has warned that there can be no blanket exception to the knock-and-announce rule in felony drug cases consistent with the Fourth Amendment. *Richards v. Wisconsin,* 520 *U.S.* 385, 117 *S.Ct.* 1416, 137 *L.Ed.*2d 615 (1997). In *Richards,* a lower state court had created a *per se* rule permitting law enforcement officers to dispense with the knock-and-announce rule in cases involving suspected felony drug offenses. The Supreme Court reversed, stating:

> [T]he fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement.
>
> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries.

618

[*Id.* at 394, 117 *S.Ct.* at 1421–22, 137 *L.Ed.*2d at 624.]

Under *Richards,* then, the task of courts evaluating the propriety of a no-knock provision is to determine whether the applying officer has articulated a reasonable suspicion to believe that one or more exceptions to the knock-and-announce rule are justified. Although reasonable suspicion is a less demanding standard than probable cause, satisfying the doctrine of reasonable suspicion "requires at least a minimal level of objective justification for [taking the police action]." *Illinois v. Wardlow,* 528 *U.S.* 119, 123, 120 *S.Ct.* 673, 676, 145 *L.Ed.*2d 570, 576 (2000). "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity." *Ibid.* (quoting *Terry v. Ohio,* 392 *U.S.* 1, 27, 88 *S.Ct.* 1868, 1883, 20 *L.Ed.*2d 889, 909 (1968)).

The Court in *Richards* also stated that the showing of reasonable suspicion justifying an exception to the knock-and-announce rule "is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Richards, supra,* 520 *U.S.* at 394–95, 117 *S.Ct.* at 1422, 137 *L.Ed.*2d at 622. Within a similar context of determining the reasonableness of investigative stops, this Court has stated that

it is incumbent upon a reviewing court to evaluate the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions. An investigatory stop is valid only if the officer has a "particularized suspicion" based upon an objective observation that the person stopped has been or is about to engage in criminal wrongdoing. The "articulable reasons" or "particularized suspicion" of criminal activity must be based upon the law enforcement officer's assessment of the totality of circumstances with which he is faced. Such observations are those that, in view of [the] officer's experience and knowledge, taken together with rational inferences drawn from those facts, reasonabl[y] warrant the limited intrusion upon the individual's freedom.

[*State v. Davis,* 104 *N.J.* 490, 504, 517 *A.*2d 859 (1986).]

*See also State v. Maryland,* 167 *N.J.* 471, 487, 771 *A.*2d 1220 (2001) (emphasizing that officer's hunch, without more, cannot rise to level of reasonable and articulable suspicion in context of investigatory stop).

■ In applying that jurisprudence within the framework of the knock-and-announce rule, we discern the following tenets. First, to justify a no-knock warrant provision, a police officer must have a reasonable, particularized suspicion that a no-knock entry is required to prevent the destruction of evidence, to protect the officer's safety, or to effectuate the arrest or seizure of evidence. Second, the police officer must articulate the reasons for that suspicion and may base those reasons on the totality of the circumstances with which he or she is faced. Third, although the officer's assessment of the circumstances may be based on his or her experience and knowledge, the officer must articulate a minimal level of objective justification to support the no-knock entry, meaning it may not be based on a mere hunch.

### III.

#### A.

With that framework in mind, we turn to the case at hand. In arguing that the record justified the no-knock provision, the State stresses that the drugs sold in Figaroa's apartment, heroin and cocaine, were by their nature easy to destroy; that if the officers delayed the entry by first knocking, defendant would have been afforded the opportunity to resist the entry or flee, which, in turn, would have implicated the safety of the second-floor residents in the apartments next to or near Figaroa's apartment; that the time of the search, about 8:30 p.m., suggested that defendant was likely to be in the apartment, thereby increasing the risk to the police and increasing the likelihood that the evidence would be destroyed; and finally, that defendant's nickname, "Earthquake," connoted strength or a violent temper, leading the police reasonably to believe that defendant, if warned, would frustrate the entry or threaten their safety. The State further argues that defendant's purported reticence in selling drugs out of an apartment increased the likelihood that he would react violently if confronted by the police.

■ We will address each of the State's arguments separately. In respect of the destructibility of heroin and cocaine, we take judicial notice of the fact that small quantities of narcotics sold out of a person's home are almost always susceptible to destruction or disposal. If that reason alone justified a no-knock entry, it would justify an unannounced entry in virtually every instance involving a residential search, thereby resembling the kind of blanket rule forbidden by *Richards*. *See also State v. Bamber*, 592 *So.*2d 1129, 1130 (Fla.Dist.Ct.App.1991) (concluding that simply because person has small quantity of drugs in home with normal plumbing will not, by itself, justify no-knock entry), *approved*, 630 *So.*2d 1048 (Fla.1994).

■ To satisfy the destructibility-of-evidence exception to the knock-and-announce rule, the police must articulate some reason specific to the crime, to the person under investigation, or to some other permissible factor, that leads them reasonably to believe that destruction of evidence is more than a hypothetical possibility. In that regard, *State v. Bilancio*, 318 *N.J.Super.* 408, 724 *A.*2d 278 (App.Div.), *certif. denied*, 160 *N.J.* 478, 734 *A.*2d 793 (1999), is instructive. In *Bilancio*, the Appellate Division considered an application for a no-knock warrant, concluding that it did not set forth a reasonable suspicion that evidence would be destroyed if the police knocked and announced their presence before entering the premises. In reaching that conclusion, the court stated that "the warrant affidavit did not set forth any information concerning the size or layout of defendant's property, whether persons other than defendant resided there, or whether the police reasonably expected defendant or other persons involved in drug distribution to be present when the search was conducted." *Id.* at 417, 724 *A.*2d 278.

We reason similarly in this case. In his testimony before the municipal court, Detective Falcone did not explain, other than in a conclusory fashion, why he believed that the narcotics could be destroyed if the officers executing the warrant had to first knock and announce their presence. *Cf. State v. Novembrino*, 105 *N.J.*

95, 109, 519 *A*.2d 820 (1987) (observing that "probable cause is not established by a conclusory affidavit that does not provide a magistrate with sufficient facts to make an independent determination as to whether the warrant should issue"). Whatever the detective may have suspected in respect of the destructibility of the evidence, he did not expressly articulate those suspicions to the issuing judge. The no-knock component of the warrant application was thus deficient in that regard.

The State's next two proffered reasons, namely, that the location of the apartment implicated the safety of other residents and that the safety of the officers was at risk, are equally unavailing. We note that nowhere in the detective's testimony does he describe Figaroa's apartment as a second-floor unit near or close to neighboring apartments. In other words, if the police harbored a concern for the safety of neighboring residents, they did not articulate that concern to the issuing court. Similarly, in respect of the officers' safety, the testimony set forth no particularized suspicion that their safety would be compromised if the police had been required to knock and announce their presence before entering the dwelling.

In cases in which the police announced their presence and were greeted with silence, courts in other jurisdictions have concluded that a reasonable time must elapse between the announcement and the officers' forced entry. *See* William B. Bremer, *What Constitutes Compliance with the Knock and Announce Rule in Search of Private Premises–State Cases*, 85 *A.L.R.* 5th 1 (2001) (describing cases in which courts have held time lapses ranging from fifteen seconds to ten minutes to be reasonable depending on particular circumstances). Courts also have upheld the immediate entry by the police when the officers have been presented with exigent circumstances after arriving on the scene. *Ibid.*

■ We are not presented with those precise questions here. To place our disposition in its proper context, however, we note that to pass muster under the knock-and-announce rule, the time lapse between the police announcement and any forced entry must

be reasonable but not necessarily extensive in length, depending on the circumstances of a given case. *See, e.g., Mazepink v. State,* 336 *Ark.* 171, 987 *S.W.*2d 648, 653 (observing that knock-and-announce rule requires police "to wait a reasonable period of time before forcing entry into the premises"), *cert. denied,* 528 *U.S.* 927, 120 *S.Ct.* 321, 145 *L.Ed.*2d 250 (1999). In keeping with those principles, we cannot conclude on this record that the applying officer adequately explained how an announced entry would have measurably hampered the police in their execution of the warrant.

■ Lastly, the State contends that defendant's nickname, "Earthquake," signaled his propensity for violence and thus furnished a valid basis on which to justify a no-knock warrant. The Court disagrees. We can imagine how defendant's nickname might invoke images that are either sinister or benign depending on one's perspective. We find no basis in our jurisprudence to permit courts to consider such ambiguous factors in evaluating applications for no-knock warrants. That is not to suggest that a suspect's nickname or alias may never be used in this setting. This is not a situation, for example, in which the State relies on a nickname as a possible identifier of a person suspected of criminal activity or to distinguish between different suspects. See *State v. Paduani,* 307 *N.J.Super.* 134, 147, 704 *A.*2d 582 (App.Div.) (permitting use of defendant's nickname at trial to distinguish perpetrators), *certif. denied,* 153 *N.J.* 216, 708 *A.*2d 67 (1998). Absent those and other legitimate circumstances, the right to be free of unreasonable searches cannot hinge on a person's nickname.

■ In the alternative, the State argues that if the record cannot justify the unannounced entry, the Court nonetheless should affirm defendant's conviction because the police officers relied on the validity of the no-knock warrant in good faith. We rejected a similar argument in *State v. Novembrino, supra,* 105 *N.J.* at 159, 519 *A.*2d 820, in which we held that when there is insufficient probable cause to justify the issuance of a search warrant, the police cannot sustain the wrongful search by demon-

strating that they acted in good faith. Here, the same basic principle applies to the no-knock component of the warrant. Moreover, to permit a good-faith exception to apply in respect of one element of the warrant, *i.e.*, the no-knock provision, but not in respect of other elements would lead ultimately to a patchwork of incongruous case law. We serve the criminal justice system best by enforcing clear and uniform rules whenever appropriate under the circumstances. See *State v. Lark*, 163 *N.J.* 294, 297, 748 *A.*2d 1103 (2000) (observing that inconvenience to police caused by search-and-seizure rules is "outweighed by the benefit to law enforcement officers in having clear guidance in this area of the law").

## B.

Our holding is not to be understood as altering the doctrine of reasonable suspicion or placing additional burdens on law enforcement. We do no more than apply our existing jurisprudence to the particular circumstances of this case. The police must articulate to the issuing judge the reasons why a no-knock warrant is necessary; mere conclusory statements or unsupported assumptions are not sufficient. Without intending criticism of either the issuing judge or the applying officer, our sense from the record is that the parties treated the no-knock provision as boilerplate language to be included in the warrant without discussion or analysis. As noted, in the four-page transcript of Detective Falcone's testimony, there is only one sentence devoted specifically to the no-knock provision. The issuing court itself made no specific reference to the provision.

We do not suggest that judges must make detailed findings to support a no-knock provision. Nonetheless, there must be some indication in the record that the applying officer articulated his or her reasonable suspicions to justify the no-knock provision before the issuing court can consider and ultimately approve that form of entry. Stated differently, a court cannot assume that merely because there is probable cause to justify the search the

circumstances also justify a no-knock entry. We reiterate that although the showing required to justify an unannounced entry "is not high," *Richards, supra,* 520 *U.S.* at 394–95, 117 *S.Ct.* at 1422, 137 *L.Ed.*2d at 624, the applying officer must state the specific reasons for departing from the knock-and-announce rule to the satisfaction of the reviewing court.

■ Nor do we suggest that the police could not, in an appropriate case, justify a no-knock entry absent a specific warrant provision when presented with exigent circumstances. See *State v. Goodson,* 316 *N.J.Super.* 296, 304, 720 *A.*2d 381 (App.Div.1998) (suggesting that, even in absence of no-knock provision, certain circumstances confronting police at scene may be "sufficient to dispense with the knock-and-announce requirement"). Rather, for the narrow purposes of this appeal, we reaffirm the existing tenet that "in deciding whether the facts and circumstances of a particular entry justify dispensing with the knock-and-announce requirement, the trial court must make a fact-specific and fact-sensitive inquiry as to whether the entry was justifiable under [those] circumstances[.]" *Id.* at 303, 720 *A.*2d 381.

Such an inquiry is not reflected in the record. We note, for example, the facts that Detective Falcone did *not* include in his application that might have justified an unannounced entry. He did not suggest that the informant had observed weapons or had perceived any indication of defendant's propensity for violence when undertaking the controlled buy. He did not furnish the issuing judge with the layout of Figaroa's apartment or describe it in such fashion as would have enabled the judge to assess whether the occupants could have destroyed evidence in the short time that would have elapsed between the officers announcing their presence and entering the premises.

Moreover, the applying officer did not provide the court with information concerning defendant's criminal history or background that might have supported the conclusion that defendant had a propensity for violence. (According to defendant's pre-sentence report, his prior offenses include aggravated manslaughter, a fact

that might have been used to support a reasonable suspicion to believe that officer safety would be compromised without a no-knock entry.) Again, we make those observations not as criticism but merely as guidance for future cases.

 The Court is also persuaded by the fact that this case involves the search of a residential dwelling as opposed to a car or office. There is a lesser expectation of privacy in one's automobile, *State v. Colvin,* 123 *N.J.* 428, 433, 587 *A.*2d 1278 (1991), and in one's office, *State v. Bonaccurso,* 227 *N.J.Super.* 159, 164, 545 *A.*2d 853 (Law Div.1988) (citing *Donovan v. Dewey,* 452 *U.S.* 594, 101 *S.Ct.* 2534, 69 *L.Ed.*2d 262 (1981)), than in one's home. " 'An individual's privacy interests are nowhere more clearly defined or rigorously protected by the courts than in the home[,] the core of [F]ourth [A]mendment rights.' " *Kornegay v. Cottingham,* 120 *F.*3d 392, 399–400 (3d Cir.1997) (quoting *Wanger v. Bonner,* 621 *F.*2d 675, 681 (5th Cir.1980)). *See also State v. Eason,* 234 *Wis.*2d 396, 610 *N.W.*2d 208, 212 (App.2000) (emphasizing "that the 'no-knock' entry is a particularly violent intrusion into the home"), *rev'd on other grounds,* 245 *Wis.*2d 206, 629 *N.W.*2d 625 (2001).

Rooted deeply in our federal and State constitutions and four centuries of common law, the knock-and-announce rule continues to serve its stated purposes. As noted, the rule seeks to decrease the potential for violence, protect our privacy interests by reducing the chance that the police will enter the wrong premises, and prevent the physical destruction of property by allowing the accused the opportunity to permit the police to enter the dwelling. We foster those aims by adhering to the knock-and-announce rule unless its exceptions are justified in accordance with the standards described in this opinion.

Lastly, we note for completeness that our disposition is required under both the Fourth Amendment and the analogous provision in the New Jersey Constitution. Although our disposition is consistent with federal jurisprudence, we also conclude that the no-knock entry was impermissible on State constitutional grounds for

the reasons already stated. *See State v. Cooke,* 163 *N.J.* 657, 666, 751 *A*.2d 92 (2000) (outlining those occasions in which "this Court has interpreted our State Constitution as affording its citizens greater protections than those afforded by its federal counterpart").

## IV.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division to vacate the judgment of conviction.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.