802 A.2d 545 (2002)
353 N.J. Super. 251
STATE of New Jersey, Plaintiff-Appellant,
v.
Vincenta I. VENTURA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted June 4, 2002.
Decided July 12, 2002.
*546 Fred J. Theemling, Jr., Hudson County Prosecutor, attorney for the appellant (Domenick C. Stampone, Assistant Prosecutor, on the brief).
Miller, Meyerson, Schwartz, & Corbo, attorneys for the respondent (Gerald Miller, Jersey City, of counsel).
Before Judges STERN, EICHEN and COLLESTER.
The opinion of the court was delivered by EICHEN, J.A.D.
Defendant Vincenta Ventura was charged with possession of marijuana in a quantity of more than fifty grams, in violation of N.J.S.A. 2C:35-10a(3) (count one); one count of possession of marijuana with the intent to distribute, in a quantity of one ounce or more but less than five pounds, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(11) (count two); one count of possession of marijuana, in a quantity of one ounce or more, with the intent to distribute within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-7 (count three); one count of possession of marijuana, in a quantity of less than one ounce, with the intent to distribute to an undercover police officer, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(12) (count four); one count of distributing marijuana, in a quantity less than one ounce, to an undercover police officer, within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-7 (count five); and one count of soliciting a person seventeen years of age or younger, in violation of N.J.S.A. 2C:35-4, 2C:35-5a, and 2C:35-6 (count six).
The evidence underlying the charges was seized during the execution of a search warrant on March 7, 2001. Defendant filed a motion to suppress the evidence and the trial court granted the motion. We granted leave to appeal and affirm the order suppressing the evidence.
The issues presented are whether a no-knock search warrant was justified by the police affidavit presented to the issuing court,[1] and, if not, whether the circumstances preceding the entry into defendant's residence were sufficiently emergent to justify the no-knock entry of defendant's apartment under the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution.
Here, the motion judge essentially concluded that there was no particularized *547 reasonable basis articulated in the affidavit to support the issuance of the warrant to justify authorizing a no-knock entry of defendant's apartment, and that no exigent circumstances existed immediately prior to the police entry of the apartment to justify dispensing with the knock and announce rule. Accordingly, the judge suppressed the evidence.
These are the pertinent facts derived from the suppression hearing, the affidavit submitted in support of the warrant, and the warrant itself. On March 7, 2001, Detective Victor Martinez of the West New York Police Department submitted an affidavit to the court and obtained a search warrant for apartment 13 located on the first floor of a building at 453 62nd Street, West New York. The targeted location and occupant are described in paragraph 10 of the affidavit in support of the warrant which states:
Based on all the facts contained herein, the affiant has probable cause to believe and does believe that evidence pertaining to the distribution and possession of Marijuana can be found at 453-62nd St.[,] apt[.] 13[,] West New York[,] NJ 07093. Described as a gray brick multi-dwelling apartment building with the numbers 453 above exterior doors and a black fire escape on the 62nd St. side. On the person of one (Jane Doe) Hispanic female described as a 5'06" light skinned Hispanic in her early 30's with Brown hair below the shoulder length and weighing approx. 180 lbs.
The probable cause for the issuance of the warrant consisted of information obtained from a confidential informant who had proved reliable in the past, two controlled buys of marijuana from the premises to an undercover police officer, as well as "residential complaints from concerned citizens" concerning a "high volume of people entering and exiting [the apartment] at all hours throughout the night every night of [the] week." The concluding paragraph of the affidavit requested "that the affiant be permitted to execute th[e] search warrant during the day time or the night time without being required to knock and announce [his] authority and intention." In support of the no-knock provision, the affidavit provided:
Due to the very nature of drug trafficking, it has been the Affiant's experience that these illegal activities will take place at any hour of the day or night depending on the availability of the drugs and the needs of the purchaser. Therefore, the affiant must be guided accordingly and execute the search warrant when circumstances indicate that the objectives of the search warrant can be best achieved. Furthermore, based on the Affiant's experience in this field of this investigation, drug traffickers are very sensitive to the possibility of activities such as the execution of a search warrant by law enforcement authorities. Prearranged plans exist both for the destruction of the evidence and for the escape from the premises of the subjects prior to their apprehension and the seizure of contraband. Firearms are also commonly kept in such premises for protection from law enforcement and from competitors. Therefore, in order to gain entrance to the premises in a manner most conducive to the proper and thorough seizure of evidence and to minimize the danger to and enhance the safety of the executing officer, it will be necessary to execute this Search Warrant without knocking and announcing our authority and intention.
Based on the affidavit, the court issued the warrant on a finding of probable cause and also authorized the no-knock entry into the premises to be searched.
*548 On March 7, 2001, prior to the execution of the warrant, the police "set up" surveillance at a location near the apartment which permitted them to observe activities both outside and inside the building, including defendant's apartment. Detective Sergio Herrera was "[the] cover officer for the entry team for the execution of the warrant." As "cover officer," Detective Herrera's duty was to observe activities occurring in front of the target location, such as drug sales, and to watch for the presence of "lookouts."
Detective Herrera testified that at approximately 4:45 p.m. he observed a young man who appeared to be a juvenile (the juvenile) exit apartment 13 and engage in a suspected drug transaction with two other juveniles on the street. After the transaction, the juvenile walked away with the other two juveniles. Five or ten minutes later, the juvenile returned, entered the building and was seen re-entering the targeted apartment. At approximately 5:05 p.m., the juvenile returned to the street where he was again observed engaging in another suspected drug transaction with the occupants of a blue Honda Accord. After that transaction, the juvenile walked away from the building. The officers waited a short time to execute the warrant to assure "he had departed the area to make sure he didn't go in and knock on the door [and] run back in to advise whoever was inside the apartment to alert them to destroy the evidence." At 5:21 p.m., the warrant was executed without the police first announcing their presence and defendant was arrested. A search of the apartment disclosed drug paraphernalia, currency totaling $246, and suspected marijuana.
At 5:30 p.m., after the police had entered the apartment, the juvenile was arrested on Bergenline Avenue between 61st and 62nd Streets in the middle of yet another drug transaction. At the time of his arrest, the juvenile was unaware that the warrant had been executed or that the police had entered defendant's apartment. After his arrest, a cell phone the juvenile was carrying was confiscated. The cell phone displayed the telephone number of the targeted premises, suggesting that the juvenile may have been attempting to call defendant to alert her to the police presence. In addition to the cell phone, the police recovered plastic bags containing suspected marijuana and currency in the possession of the juvenile.
At the suppression hearing, the motion judge determined that the no-knock provision was invalid because it did not contain more than generalized suspicions and "boilerplate language" to justify dispensing with the knock and announce rule iterated by the Supreme Court in State v. Johnson, 168 N.J. 608, 775 A.2d 1273 (2001). Attempting to justify the no-knock provision in the warrant, the State had urged the judge to draw an inference from the fact that the building was described in the affidavit as "a multi-dwelling apartment building... [with] a black fire escape" to conclude that the "drugs could be gotten rid of or the person could have gotten out of that apartment." The judge disagreed, stating that "[e]very building in the country has either a fire escape or a window or something from which somebody can either throw the drugs out or jump out." Therefore, he concluded there was no "particularized suspicion" to support the conclusion "that there [was] going to be destruction of the evidence or that the officer's safety is at issue or the arrest or seizure of the evidence is going to be compromised."
In addition, the warrant provision aside, the judge determined that the State had failed to demonstrate that exigent circumstances existed to justify the unannounced entry of the apartment, stating:

*549 Although the State referred to the juvenile as a look-out in its brief, Detective Herrera never testified that the juvenile was, in fact, a look-out or that the police had to dispense with "knock and announce" because of the juvenile's presence at the scene and his ability to immediately communicate the police entry. On the contrary, the juvenile had disappeared and was so oblivious to his alleged obligation as a look-out that he was unaware of the police raid until nine minutes after it had begun.
Accordingly, the judge concluded that "the State was unable to show the necessary degree of urgency (or for that matter, any degree of urgency) that would equate to a reasonable belief that evidence was about to be destroyed or that the Officers' safety was in peril."
On appeal, the State raises the following arguments:
POINT I
TRIAL COURT ERRED IN SUPPRESSING EVIDENCE SEIZED BECAUSE THE POLICE HAD PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES.
A. DEFENDANT DID NOT CHALLENGE THE PROBABLE CAUSE DETERMINATION, BUT RATHER ATTACKED THE "NO-KNOCK" PROVISION CONTAINED IN THE WARRANT.
B. FAILURE TO FULLY ARTICULATE THE BASIS FOR A "NO-KNOCK" PROVISION DID NOT MERIT SUPPRESSION BECAUSE A REASONABLE DEGREE OF EXIGENCY EXISTED TO JUSTIFY POLICE ENTRY WITHOUT KNOCKING AND ANNOUNCING.
As a threshold matter, we note the standard governing our review of the issues presented on appeal. To the extent the motion judge's rulings rested upon factual findings, those determinations "should not ordinarily be disturbed where `there is substantial evidence to support [his] implicit finding[s].'" State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999) (quoting Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475, 541 A.2d 1063 (1988)). However, where the rulings are based upon legal conclusions, the judge is afforded no deference on appeal. See Manalapan Realty, L.P. v. Tp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) (citing State v. Brown, 118 N.J. 595, 604, 573 A.2d 886 (1990)). We are satisfied that Judge Schultz's factual findings are supported by substantial credible evidence in the record and that his legal conclusions are correct.
"In executing a valid search warrant containing an invalid authorization for a no-knock entry into defendant's residence, the police were in the same position they would have been in if the warrant did not authorize a no-knock entry." State v. Bilancio, 318 N.J.Super. 408, 420, 724 A.2d 278 (App.Div.1999). That is, "the police still could have entered defendant's apartment without knocking provided exigent circumstances existed justifying the entry." Ibid.
The United States Supreme Court has "held squarely that the method of an officer's entry into a dwelling `is an element of the reasonable inquiry under the Fourth Amendment.'" Johnson, supra, 168 N.J. at 616, 775 A.2d 1273 (quoting Wilson v. Arkansas, 514 U.S. 927, 931, 115 S.Ct. 1914, 1916, 131 L. Ed.2d 976, 985 (1995)). In Johnson, our Supreme Court held that the application for a search warrant in that case did not set forth sufficient specific facts to justify the issuance of a no-knock warrant. In evaluating the propriety of a no-knock entry under the particular warrant provision there, the Court stated:

*550 [T]o justify a "no-knock" entry police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.
[Johnson, supra, 168 N.J. at 617, 775 A.2d 1273 (quoting Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 1421-22, 137 L. Ed.2d 615, 624).]
The Court further observed that although the "reasonable suspicion" standard is a less demanding standard than probable cause, there must be articulated in the warrant application "at least a minimal level of objective justification" for police to enter a dwelling unannounced. Ibid. (quoting Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 676, 145 L. Ed.2d 570, 576 (2000)). In other words, more than "a suspicion or `hunch' is required." Id. at 618, 775 A.2d 1273 (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L. Ed.2d 889, 909 (1968)). While this standard may not be "high," it must be satisfied "whenever the reasonableness of a no-knock entry is challenged." Ibid. (quoting Richards, supra, 520 U.S. at 394-95, 117 S.Ct. at 1422, 137 L. Ed.2d at 622).
The Johnson Court then set forth the "tenets" to be followed in knock and announce cases:
First, to justify a no-knock warrant provision, a police officer must have a reasonable, particularized suspicion that a no-knock entry is required to prevent the destruction of evidence, to protect the officer's safety, or to effectuate the arrest or seizure of evidence. Second, the police officer must articulate the reasons for that suspicion and may base those reasons on the totality of the circumstances with which he or she is faced. Third, although the officer's assessment of the circumstances may be based on his or her experience and knowledge, the officer must articulate a minimal level of objective justification to support the no-knock entry, meaning it may not be based on a mere hunch.
 [Johnson, supra, 168 N.J. at 619, 775
 A.2d 1273.]
In sum, the Court held that the knock and announce rule requires the State to articulate a sufficient reason "specific to the crime, to the person under investigation, or to some other permissible factor, that leads them reasonably to believe that destruction of evidence is more than a hypothetical possibility" in order to obtain a warrant authorizing an unannounced entry into a dwelling. Id. at 620, 775 A.2d 1273. However, in invalidating the warrant provision there, the Court made clear that "the police ... in an appropriate case, [could] justify a no-knock entry absent a specific warrant provision when presented with exigent circumstances." Id. at 624, 775 A.2d 1273 (citing State v. Goodson, 316 N.J.Super. 296, 720 A.2d 381 (App.Div. 1998)).
In this case, the State argues that the facts and circumstances justify the unannounced entry into defendant's apartment despite the invalid no-knock provision in the warrant. The State hypothesizes a scenario in which it claims there was a risk defendant would escape and the drugs would be destroyed if the police had announced its presence. It essentially asserts that the affiant's description of the building as a "multi-dwelling apartment building" with a "fire escape" created an adequate basis for the no-knock entry. However, as the motion judge correctly observed, because those general facts standing alone could apply in every case that did not involve a single-family dwelling, it did not justify the no-knock entry of defendant's dwelling. We agree.
*551 Without more information concerning the configuration of the building and its occupants, "specific to the crime [and] to the person under investigation," the State cannot justify the unannounced entry here based on the description of the building. Johnson, supra, 168 N.J. at 620, 775 A.2d 1273.
Nor does the fact that the juvenile who had been selling marijuana outside the premises and could have served as a lookout had he been present at the precise moment the warrant was executed, "satisfy the destructibility-of-evidence exception to the knock-and-announce rule[.]" Ibid. See State v. DeLane, 207 N.J.Super. 45, 503 A.2d 903 (App.Div.1986). Although the juvenile was a potential lookout who might have warned defendant of the imminent execution of the search warrant, in this case he was not acting as a lookout immediately prior to its execution as evidenced by the fact he was selling drugs at a different location and was not even present when the police actually entered defendant's apartment. Therefore, he could not have alerted defendant of the imminent arrival of the police because he was unaware of it. Hence, the police had no reasonable basis for believing that the juvenile was aware of the execution as it unfolded so as to create an emergent situation justifying the unannounced entry by the police. The fact that the cell phone displayed defendant's telephone number is immaterial in light of the timing of the execution which occurred nine minutes before the juvenile even became aware that the police had entered the apartment.
We conclude, therefore, that the juvenile's conduct prior to the execution of the warrant did not create the type of exigency required to create a "reasonable, particularized suspicion" by the police that the drugs would be destroyed or defendant's arrest thwarted if they had announced their presence. Cf. State v. Alvarez, 238 N.J.Super. 560, 568, 570 A.2d 459 (App. Div.1990). Moreover, if we were to condone this unannounced entry, the purposes of the knock and announce rule would be completely frustrated. See Johnson, supra, 168 N.J. at 616, 775 A.2d 1273 (listing rationale undergirding the rule: (1) to decrease the potential for violence; (2) to protect privacy; and (3) to prevent the physical destruction of the occupant's property).
In sum, given the facts and circumstances surrounding the no-knock entry in this case, the police officers did not act in an objectively reasonable manner under the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution when they entered defendant's apartment without first announcing their presence because no exigency existed justifying the no-knock entry.
Accordingly, the order suppressing the evidence is affirmed.
NOTES
[1] The identity of the issuing court is unclear in the record.