NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4764-14T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

 v.

RASHAD S. SEARLES,

 Defendant-Appellant.
_____________________________________________________________

 Submitted May 31, 2017 – Decided June 30, 2017

 Before Judges Ostrer, Leone, and Moynihan.

 On appeal from Superior Court of New Jersey,
 Law Division, Ocean County, Indictment No. 13-
 05-1239.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Jay L. Wilensky, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Joseph D. Coronato, Ocean County Prosecutor,
 attorney for respondent (Samuel Marzarella,
 Chief Appellate Attorney, of counsel; Roberta
 DiBiase, Supervising Assistant Prosecutor, on
 the brief).

PER CURIAM

 Defendant, Rashad S. Searles, moved to suppress evidence

seized during the execution of search warrants at two different
locations. Following the denial of that motion, defendant pleaded

guilty to second-degree possession of a controlled dangerous

substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5a(1),

2C:35-5b(2). Defendant was sentenced to an extended term of ten

years during which he is ineligible for parole for forty-six

months, concurrent to a parole violation. Defendant contends on

appeal:

 POINT I

 THE "NO-KNOCK" SEARCHES HERE WERE UNSUPPORTED
 AND UNREASONABLE, AND THE RESULTS ACCORDINGLY
 MUST BE SUPPRESSED. U.S. CONST., AMENDS. IV,
 XIV; N.J. CONST. (1947), ART. 1, PAR.7.

 POINT II

 THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE,
 NECESSITATING REDUCTION.

We disagree and affirm.

 I.

 Detective David Fox, an investigator with the Ocean County

Prosecutor's Office Special Operations Group, submitted an

affidavit in support of the application for both search warrants

that related the following: Fox and another detective met with a

confidential informant (CI) who advised that defendant employed

"multiple individuals" "distributing heroin from various locations

in the Ocean County New Jersey area." The CI also told the

 2 A-4764-14T1
detectives defendant stored heroin in various locations, including

the target houses on Red Cedar Street in Toms River and First

Avenue in South Toms River. Fox indicated various records linked

defendant to both addresses. Two days before the application, the

CI informed the affiant defendant possessed a large quantity of

heroin, and advised the CI to contact him when the CI "was ready

to purchase a quantity of cocaine."

 The detective used the CI to make three controlled purchases

of heroin from defendant, the details of which are set forth in

the affidavit. Police surveilled defendant leave the First Avenue

house, and travel directly to an arranged location to complete the

transaction with the CI during the first and second operations;

they observed him return directly to and enter the First Avenue

house after the first purchase. Police observed defendant leave

the Red Cedar Street house and travel directly to an arranged

location to complete the sale to the CI during the third controlled

buy; defendant returned to and entered the First Avenue house

immediately after he completed the sale.

 The affidavit also disclosed that records in the Prosecutor's

Office documented that another informant, whose cooperation

resulted in defendant's arrest and conviction for distribution of

heroin, identified defendant as a member of the "'Bloods' street

gang."

 3 A-4764-14T1
 The affiant also provided defendant's criminal history:

 Date of Arrest Charges Final Disposition
November 18, 1998 possession of CDS; dismissed
 possession with
 intent to distribute
 (PWI)
March 26, 2000 possession of CDS; dismissed
 PWI; possession of
 firearm for an
 unlawful purpose
June 10, 2000 distribution of CDS; conviction for
 aggravated assault; distribution CDS
 resisting arrest
August 18, 2000 resisting arrest conviction for
 contempt of court
August 25, 2000 possession of not guilty
 marijuana
December 23, 2000 possession of CDS dismissed
December 30, 2000 possession of CDS; conviction for
 PWI; resisting distribution CDS
 arrest
August 20, 2005 simple assault dismissed
December 26, 2006 obstruction of the guilty
 administration of
 law
January 29, 2009 PWI guilty
November 16, 2009 resisting arrest; guilty: distribution
 possession of CDS; CDS
 PWI - school zone

 Fox applied for a "no-knock" warrant. He generally related,

based on his training and experience, the ease with which CDS can

be destroyed after criminals learn that law enforcement is on

scene during the execution of a search warrant. He also mentioned

that drug dealers often possess "dangerous weapons." The detective

 4 A-4764-14T1
contended defendant's arrests for possession of a firearm,

aggravated assault, resisting arrest and obstructing the

administration of law indicated that he posed a risk to the safety

of officers executing the warrant. The detective also posited

defendant's prior record exposed him to a longer prison sentence,

increasing the risk that defendant would resist arrest. Fox cited

defendant's status in the Bloods as another reason for concern for

violence and the destruction of evidence. He also swore that

defendant "and/or one of his 'Blood' street gang associates will

be present" at either one of the two target residences when the

warrant was executed.

 A judge issued search warrants, containing no-knock

provisions, for both residences. The motion judge found, and the

parties do not contest, that the warrant for Red Cedar Street was

executed at 5:03 a.m.; the warrant for First Avenue was executed

by a separate team of law enforcement personnel at 5:18 a.m.

Defendant was arrested at the Red Cedar Street house; the time of

his arrest is unknown. Two adults and three children were also

present in the Red Cedar Street house. Three of defendant's adult

relatives were present at the First Avenue house. Quantities of

CDS were seized at both locations.

 5 A-4764-14T1
 II.

 Our review of a judge's decision on a motion to suppress

evidence is limited. State v. Vargas, 213 N.J. 301, 326-27 (2013).

In performing our task, we are obliged to uphold the motion judge's

factual findings that are supported by sufficient credible

evidence in the record. State v. Diaz-Bridges, 208 N.J. 544, 565

(2012). We need not, however, give deference to a trial judge's

interpretation of the law, and we review legal issues de novo.

Vargas, supra, 213 N.J. at 327.

 The "knock and announce" requirement is "[r]ooted deeply in

our federal and State constitutions and four centuries of common

law," State v. Johnson, 168 N.J. 608, 625 (2001), and "protects

rights and expectations linked to ancient principles in our

constitutional order." Hudson v. Michigan, 547 U.S. 586, 602, 126

S. Ct. 2159, 2170, 165 L. Ed. 2d 56, 71 (2006) (Kennedy, J.,

concurring). Exceptions to the "knock and announce" requirement

exist when "(1) immediate action is required to preserve evidence;

(2) the officer's peril would be increased; or (3) the arrest

would be frustrated." State v. Fair, 45 N.J. 77, 86 (1965). The

Johnson Court announced a tripartite test to determine if a no-

knock provision may be included in a warrant:

 First, . . . , a police officer must have a
 reasonable, particularized suspicion that a
 no-knock entry is required to prevent the

 6 A-4764-14T1
 destruction of evidence, to protect the
 officer's safety, or to effectuate the arrest
 or seizure of evidence. Second, the police
 officer must articulate the reasons for that
 suspicion and may base those reasons on the
 totality of the circumstances with which he
 or she is faced. Third, although the officer's
 assessment of the circumstances may be based
 on his or her experience and knowledge, the
 officer must articulate a minimal level of
 objective justification to support the no-
 knock entry, meaning it may not be based on a
 mere hunch.

 [Johnson, supra, 168 N.J. at 619.]

 The showing required to meet the reasonable, particularized

suspicion test is "not high." Id. at 624 (quoting Richards v.

Wisconsin, 520 U.S. 385, 395-95, 117 S. Ct. 1416, 1422, 137 L. Ed.

2d 615, 622 (1999)). "[T]he level of suspicion required is

'considerably less than proof of wrongdoing by a preponderance of

the evidence,' and 'obviously less' than is necessary for probable

cause." State v. Gamble, 218 N.J. 412, 428 (2014) (quoting United

States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L.

Ed. 2d 1, 10 (1989)). "The determination is highly fact sensitive

and requires a balancing of risks." State v. Jones, 179 N.J. 377,

406 (2004). "[T]here must be some indication in the record that

the applying officer articulated his or her reasonable suspicions

. . . ." Johnson, supra, 168 N.J. at 623.

 7 A-4764-14T1
 We agree with the motion judge that Fox's general contentions

that drug evidence can be easily destroyed, and that drug dealers

often possess weapons, cannot themselves justify a no-knock

provision; they are the type of conclusory allegations that

"swallow the rule" because they apply to virtually every drug

case, and are not reasons specific to the crime or defendant. Id.

at 617, 620, 623. Fox's recitation of defendant's prior record,

however, provided specific information that, as the motion judge

found, established a reasonable, particularized suspicion to

believe a no-knock warrant was required to protect officer safety.

Jones, supra, 179 N.J. at 398-99. Defendant's arrests for

possession of a firearm for an unlawful purpose, aggravated

assault, and resisting arrest manifested his proclivity for

violence and avoiding apprehension. See id. at 402, 407 (holding

arrest for assault, without evidence of a conviction, can sustain

a finding of reasonable suspicion that a no-knock warrant is

required for safety of law enforcement personnel). That some of

the arrests resulted in convictions for non-violent offenses1 "does

1
 The affidavit revealed one of defendant's arrests for offenses,
including aggravated assault and resisting arrest, resulted in a
conviction for distribution of CDS; another arrest for resisting
arrest resulted in a conviction for contempt; arrests for offenses,
including resisting arrest, resulted in another distribution
conviction; and a final arrest for resisting arrest and drug
charges resulted in another distribution conviction.

 8 A-4764-14T1
not undermine the probative value to officer safety suggested by

the original charges against a suspect." Id. at 403.

 Defendant's prior convictions for distribution also subjected

him to a mandatory extended term sentence, N.J.S.A. 2C:43-6f,

increasing the chances that he would follow past form and resist

arrest, posing a risk to the police. Jones, supra, 179 N.J. at

408.

 While sufficient cause for the issuance of the no-knock

warrant existed without consideration of the second informant's

disclosure that defendant was a member of the Bloods, that

information is a factor that can establish a reasonable suspicion

of danger to police officers.2 See State v. Byrd, 198 N.J. 319,

340-41 (2009)(observing "fear of retaliation from gangs can be so

overwhelming that some persons will refuse to come forward even

when a family member is victimized or the safety of the

neighborhood is imperiled"). This evidence is tempered by the

lack of information about when the informant's disclosure was made

to the police; yet it is supported by the fact that the informant's

cooperation led to defendant's arrest and conviction for

2
 The motion judge found that defendant's "participation in the
Bloods street gang" also provided "a more than hypothetical
justification for destroying the CDS." The judge did not say why
she linked gang membership to destruction of evidence. We do not
adopt her conclusion.

 9 A-4764-14T1
distribution. No matter what weight is given to that information,

defendant's gang membership is neither a necessary or major factor

in determining that Fox presented other sufficient facts to the

issuing judge to satisfy the three-pronged test set forth in

Johnson.

 Defendant argues that his arrest at the Red Cedar Street

house obviated any danger police faced at the First Avenue house,

nullifying the no-knock provision for that residence.

 As the motion judge noted, reasonableness is the "touchstone"

in determining whether an unannounced entry to a residence is

justified. Johnson, supra, 168 N.J. at 616-17. A search passes

constitutional muster if the police conduct is objectively

reasonable. State v. Maristany, 133 N.J. 299, 305 (1993).

 Two separate teams of officers executed the search warrants

for houses located in different municipalities. Police entered

the houses fifteen minutes apart. Defendant's argument that the

Red Cedar Street team should have notified the First Avenue team

of defendant's arrest discounts many factors used to determine the

reasonableness of police actions. Both these situations were

fluid. The team at the Red Cedar Street house entered under no-

knock conditions. It encountered three adults and three children.

This was a house - not a smaller apartment - that had to be secured

by police even before a search began. There is no evidence that

 10 A-4764-14T1
the Red Cedar Street team coordinated operations with the First

Avenue team. The First Avenue team also executed a no-knock

warrant. Common sense dictates that the team was not standing

idle before they entered at 5:18 a.m. The entry to the First

Avenue house was an effort that, obviously, had to be orchestrated;

preparations had to precede entry into the house. It is

unreasonable under the circumstances to have expected the Red

Cedar Street team to halt its operation as soon as defendant was

arrested.3 Defendant's arrest was not the only task the Red Cedar

Street team needed to accomplish. They had to secure the occupants

and the premises, and maintain that security. They had to find,

seize and inventory drugs and other evidence. It was an ongoing

operation.

 The no-knock entry into the First Avenue house, pursuant to

the terms of search warrant, was valid, as was the no-knock entry

into the Red Cedar Street house.

 III.

 Defendant argues the sentencing judge "overvalued the

applicable aggravating factors and failed to find applicable

mitigating factors," resulting in an excessive period of parole

ineligibility. Defendant concedes the aggravating factors found

3
 The time of defendant's arrest was never established; nor was
the status of the search at the time of his arrest disclosed.

 11 A-4764-14T1
by the court apply, but avers that they, "particularly [aggravating

factor nine], are not particularly weighty." Defendant contends

mitigating factors nine, defendant's character and attitude

indicate he is unlikely to commit another offense, N.J.S.A. 2C:44-

1b(9), and eleven, the imprisonment of defendant would entail

excessive hardship to him or his dependents, N.J.S.A. 2C:44-

1b(11), are applicable.

 Our review of the sentencing court's decision is limited to

determining:

 first, whether the correct sentencing
 guidelines . . . have been followed; second,
 whether there is substantial evidence in the
 record to support the findings of fact upon
 which the sentencing court based the
 application of those guidelines; and third,
 whether in applying those guidelines to the
 relevant facts the trial court clearly erred
 by reaching a conclusion that could not have
 reasonably been made upon a weighing of the
 relevant factors.

 [State v. Roth, 95 N.J. 334, 365-66 (1984).]

We are mindful that we must not substitute our judgment for that

of the sentencing court. Id. at 365. Furthermore, "an appellate

court should not second-guess a trial court's finding of sufficient

facts to support an aggravating or mitigating factor if that

finding is supported by sufficient evidence in the record." State

v. Carey, 168 N.J. 413, 426-27 (2001) (internal citations omitted).

 12 A-4764-14T1
 Defendant accepted a plea offer calling for a ten-year prison

sentence with forty-eight months of parole ineligibility, which

sentence was to run concurrent to defendant's parole violation.

The sentencing judge found aggravating factors three, the risk

that defendant will reoffend, N.J.S.A. 2C:44-1a(3), six, the

extent of defendant's prior criminal history, N.J.S.A. 2C:44-

1a(6), and nine, the need for general and specific deterrence,

N.J.S.A. 2C:44-1a(9). The judge imposed a sentence less than that

bargained for: ten years with a parole disqualifier of forty-six

months.

 We do not agree with defendant's argument that his "success"

during "his significant employment history," and his educational

career through one semester of college,4 both of which were

considered by the sentencing court, together with his acceptance

of responsibility, show that his character and attitude indicate

that it is unlikely he will commit another offense. The sentencing

judge recognized defendant's lengthy history of arrests and four

prior indictable convictions. His prior distribution convictions

required the imposition of an extended term sentence. Moreover,

as the judge said, "What bothers me is that you got this charge

4
 The pre-sentence report indicates defendant completed the
semester while in state prison.

 13 A-4764-14T1
within six months of being paroled." She also found that, since

defendant had no substance abuse history, he sold heroin for the

sole purpose to make money.5 The judge's findings not only

supported her conclusions relating to the aggravating factors,

they clearly militated against finding mitigating factor nine.6

Neither his education, nor his employment kept defendant from

committing another crime.

 Defendant argues "he clearly has contributed support to at

least some extent," warranting the application of mitigating

factor eleven. As acknowledged in his brief, however, defendant's

child support arrears are significant, diminishing any basis to

find that factor. The judge took into account defendant's wish

to attend his daughter's graduation. Although she did not

5
 The judge did not find aggravating factor eleven, monetary
sanctions without imprisonment would be viewed as a cost of doing
business, N.J.S.A. 2C:44-1a(11).
6
 Defendant did not argue for any specific mitigating factors at
sentencing, but did proffer the arguments we here review.
"[M]itigating factors that are suggested, or are called to the
court's attention, ordinarily should be considered and either
embraced or rejected on the record." State v. Blackmon, 202 N.J.
283, 297 (2010). But, trial courts do not have to "explicitly
reject each and every mitigating factor argued by a defendant."
State v. Bieniek, 200 N.J. 601, 609 (2010). The judge implicitly
rejected the tendered evidence relating to the mitigating factors
now requested by defendant by finding aggravating factors three,
six and nine.

 14 A-4764-14T1
specifically find mitigating factor eleven, she, in effect,

applied it when she reduced the parole disqualifier to forty-six

months to allow defendant an opportunity to attend the graduation.

 The judge found defendant's prior record was "moderate,

bordering on lengthy." Although she did not ascribe weight to any

other aggravating factor, and did not articulate her aggregate

balance of the factors,7 we see no reason to find the base sentence

- at the bottom of the extended term second-degree range - at all

unreasonable. The period of parole ineligibility, although not

in line with the favorable base term imposed, is supported by the

substantial evidence found by the sentencing judge and, likewise,

is reasonable. See State v. Sainz, 107 N.J. 283, 294 (1987)

(sentences imposed pursuant to plea agreements are presumed

reasonable); State v. S.C., 289 N.J. Super. 61, 71 (App. Div),

certif. denied, 145 N.J. 373 (1996). Obviously, the aggravating

factors outweighed the non-existent mitigating factors. Defendant

has posited nothing that would overcome the presumed

reasonableness of the sentence imposed.

 Affirmed.

7
 Sentencing judges are required to set forth on the record the
reason for imposing the sentence and the factual basis supporting
each aggravating and mitigating factor considered. N.J.S.A.
2C:43-2e; R. 3:21-4(e). The judge must also state the balancing
process that led to the sentence. State v. Martelli, 201 N.J.
Super. 378, 385 (App. Div. 1985).

 15 A-4764-14T1