897 A.2d 411 (2006)
385 N.J. Super. 388
STATE of New Jersey, Plaintiff-Respondent,
v.
Francis S. WALKER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 6, 2006.
Decided March 10, 2006.
*416 Yvonne Smith Segars, Public Defender, attorney for appellant (Gregory R. Mueller, Designated Counsel, on the brief).
Zulima V. Farber, Attorney General, attorney for respondent (Deborah Bartolomey, Deputy Attorney General, of counsel and on the brief).
Before Judges CUFF, LINTNER and PARRILLO.
The opinion of the court was delivered by
CUFF, P.J.A.D.
Following a jury trial, defendant Francis S. Walker was convicted of third degree possession of a controlled dangerous substance (CDS) (cocaine), contrary to N.J.S.A. 2C:35-10a(1) (Count One); third degree possession of CDS with intent to distribute, contrary to N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3) (Count Two); and third degree maintaining a fortified premises, contrary to N.J.S.A. 2C:35-4.1c (Count Three). Following merger of Count One into Count Two, defendant was sentenced to consecutive four-year terms of imprisonment on Counts Two and Three. The appropriate fees, fines, penalties, assessments and license revocation were also imposed.
On appeal, defendant raises the following arguments:
POINT I
THE EVIDENCE SHOULD HAVE BEEN SUPPRESSED BECAUSE THE MANNER IN WHICH LAW ENFORCEMENT EXECUTED THE SEARCH WARRANT WAS UNREASONABLE UNDER THE FEDERAL AND STATE CONSTITUTION[S].
POINT II
N.J.S. 2C:35-4.1 IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD. (Not raised below.)
POINT III
THE TRIAL JUDGE'S INSTRUCTION TO THE JURY ON THE CHARGE OF FORTIFYING A STRUCTURE WAS LEGALLY DEFICIENT.
POINT IV
DETECTIVE FRANKLIN'S EXPERT OPINION THAT THE PREMISES WERE FORTIFIED, AND THAT DEFENDANT POSSESSED DRUGS FOR THE PURPOSE OF DISTRIBUTION WERE IMPROPERLY ADMITTED.
POINT V
DEFENDANT'S SENTENCE VIOLATED THE STATUTORY DOUBLE JEOPARDY PROHIBITION CONTAINED IN N.J.S. 2C:1-8 AND WAS OTHERWISE EXCESSIVE.
A judge issued a warrant to search the second floor of 826 George Street in Plainfield. The warrant did not authorize a "no-knock" entry to the premises.
During the afternoon of October 2, 2001, police officers positioned themselves to execute the warrant. Sergeant Michael Richards conducted surveillance and relayed his observations via radio. From his surveillance location, Richards observed Kareem Tucker[1] standing on the deck of *417 the apartment and communicating with someone inside through a hole where the doorknob is normally located. Moments later, Richards relayed that he observed an unidentified female speak into the hole in the door, pass money through the hole, and receive a small object in return. Once the woman left, Tucker took money from the hole in the door and began to count it. At that time, Richards advised the unit to execute the warrant.
When Tucker saw the officers approaching, he yelled into the hole "narcs, narcs, narcs." Detective Jeffrey Carrier attempted to gain access to the apartment using a 60-pound battering ram, admittedly without first knocking and announcing his presence. Because the front and rear doors had been barricaded with two-by-fours set in braces and with heavy-duty slide locks on the top and bottom of the door, as well as bolt locks above the knobs, the officers were unable to gain access through the porch door, the nearby window, or the front door. Defendant, who was inside the apartment, allowed the officers to enter by removing a refrigerator that had been blocking the front door.
The police searched the apartment and recovered a vial containing what was suspected to be crack cocaine on the floor next to the toilet and another similar vial inside the toilet. The battering ram was then used to dismantle the toilet to enable the officers to recover any evidence that may have been flushed. Two additional vials of suspected cocaine were recovered along with four empty glass vials. Tests later revealed that the substance was in fact cocaine.
Defendant argues that the evidence seized as a result of the execution of the search warrant should have been suppressed because the police executing the warrant violated the knock and announce terms of the warrant. Due to the circumstances at the time of execution, the police acted reasonably to disregard that provision.
The Fourth Amendment of the United States Constitution and Article I, Section 7 of the New Jersey Constitution protect citizens against unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, § 7. Because of the potential conflict between law enforcement interests and an individual's privacy interests, the common law has recognized a `knock and announce rule' embodied within the Fourth Amendment. State v. Johnson, 168 N.J. 608, 615, 775 A.2d 1273 (2001); State v. Goodson, 316 N.J.Super. 296, 302, 720 A.2d 381 (App.Div.1998) (citing State v. Love, 233 N.J.Super. 38, 44, 558 A.2d 15 (App.Div.), certif. denied, 118 N.J. 188, 570 A.2d 954 (1989)).
The manner in which the search and seizure is carried out goes to its reasonableness. Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1, 7-8 (1985). Although a knock and announcement need not precede every entry, the reasonableness of a search of a dwelling may depend on whether the officers followed the `knock and announce rule.' Johnson, supra, 168 N.J. at 616, 775 A.2d 1273. If a warrant does not authorize a no-knock entry, and law enforcement fails to knock and announce itself, then the entry will be considered warrantless. Goodson, supra, 316 N.J.Super. at 305, 720 A.2d 381. The warrantless search will be presumed invalid unless it can be established *418 that a no-knock entry was permissible under the particular circumstances. Ibid.
Certain interests of law enforcement have been found to "establish reasonableness" in cases without prior announcement. Johnson, supra, 168 N.J. at 616-17, 775 A.2d 1273. For example, compliance with the requirement is not necessary in situations where immediate action must be taken to ensure preservation of evidence; where complying with the knock and announce rule would increase danger to the officer; or where it would frustrate the arrest. Id. at 617, 775 A.2d 1273 (citing State v. Fair, 45 N.J. 77, 86, 211 A.2d 359 (1965)). Each case must be considered on its own facts. Ibid. The standard for evaluation of a "`no-knock entry'" is "`a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.'" Ibid. (quoting Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 1421-22, 137 L.Ed.2d 615, 624 (1997)). The court must determine whether the officer had a reasonable suspicion to believe that an exception to the rule was justified. Id. at 618, 775 A.2d 1273. For example, when relying upon the destruction of evidence exception, the officer needs a reason that is specific to the crime, to the person being investigated, or to another permissible factor; he cannot rely solely on a possibility. Id. at 620, 775 A.2d 1273.
Here, Judge Peim found that a look-out observed the approaching officers and warned the person inside the apartment of the impending police raid. In fact, he found that Tucker, the look-out, created the exigent circumstances by alerting defendant. He concluded that "[o]nce that warning was yelled the police were justified in concluding that the purpose of that warning was to allow the people inside either to flee . . . or to destroy evidence." Accordingly, he concluded that the no-knock entry and the destruction of the toilet were reasonable under the circumstances. We agree.
We, of course, must accord substantial deference to the factual findings of the motion judge. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). Although we do not defer to the legal ruling of the motion judge, we conclude that he correctly applied the law governing "no-knock" search warrants.
Once Tucker yelled through the hole in the door to the occupant that the police were approaching, the officers executing the search warrant had "a reasonable, particularized suspicion that a no-knock entry [wa]s required to prevent the destruction of evidence." Johnson, supra, 168 N.J. at 619, 775 A.2d 1273. The officer in charge of executing the warrant had observed a drug transaction; therefore, his suspicion that drugs were inside the apartment and may have been destroyed was based on more than a hunch. Therefore, the "no-knock" entry was appropriate under the totality of the circumstances.
Defendant also argues that N.J.S.A. 2C:35-4.1 is vague, overbroad and, therefore, unconstitutional. N.J.S.A. 2C:35-4.1 prohibits the use of booby traps or fortified premises in connection with the manufacture or distribution of controlled dangerous substances. Section 4.1c governs fortified premises; it provides:
Any person who fortifies or maintains in a fortified condition a structure for the manufacture, distribution, dispensing or possession or control with intent to manufacture, distribute or dispense, controlled dangerous substances, or who *419 violates section 3, 4, 5, 6 or 7 of chapter 35 in a structure which he owns, leases, occupies or controls, and which has been fortified, is guilty of a crime of the third degree. A structure has been fortified if steel doors, wooden planking, cross bars, alarm systems, dogs, lookouts or any other means are employed to prevent, impede, delay or provide warning of the entry into a structure or any part of a structure by law enforcement officers. [N.J.S.A. 2C:35-4.1c.]
Section 4.1a(2) defines "structure" as "any building, room, ship, vessel or airplane and also means any place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not the person is actually present." N.J.S.A. 2C:35-4.1a(2). Section 4.1d provides that a "fortification is maintained if it remains on property or in a structure while the property or structure is owned, occupied, controlled or used by the defendant." N.J.S.A. 2C:35-4.1d.
Defendant argues that the statute is unconstitutional because terms are not properly defined, the text fails to provide adequate notice of its provisions and does not sufficiently advise how offenders should be sentenced. He claims that it is overbroad and it reaches "unintended conduct" such as preventing individuals living in unsafe areas where drugs are sold from securing their homes. We disagree.
According to the United States Supreme Court, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890 (1939). "`[T]he terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" Ibid. (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)).
When considering a claim of statutory overbreadth and vagueness, the court must first determine if the law reaches "`a substantial amount of constitutionally protected conduct.'" Town Tobacconist v. Kimmelman, 94 N.J. 85, 98, 462 A.2d 573 (1983) (quoting Vill. of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982)). If it does not, then the law is not overbroad. Ibid. Next, the court should "`examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.'" Ibid. (quoting Hoffman Estates, supra, 455 U.S. at 494-95, 102 S.Ct. at 1191, 71 L.Ed.2d at 369). A law will be considered vague as applied if it does not provide sufficient clarity in its prohibition of the conduct against which the statute is to be enforced. State v. Cameron, 100 N.J. 586, 593, 498 A.2d 1217 (1985). A party claiming that a law is vague as applied may challenge the law only in respect to his or her own conduct. Ibid.
Our examination of the statute reveals that it plainly prohibits fortifying or maintaining in a fortified condition a structure used to manufacture or distribute CDS. The statute defines critical terms such as structure and maintenance of a fortified structure, and describes in detail *420 the type of accoutrements or armaments that are considered fortifications.
Furthermore, a "substantial amount" of protected behavior is not affected by the statute. Indeed, the statute does not reach the example cited by defendant, securing a home in a high-crime neighborhood. The use of bolts, locks and an alarm system only constitutes a fortification if the premises is used by a person to manufacture or distribute CDS. The statute, therefore, does not criminalize ordinary behavior. Rather, it has been as narrowly drawn as possible to meet its purpose.
Defendant also contends that the instruction to the jury on the charge of fortifying a structure was legally deficient. He contends that the instruction on the fortification charge was confusing and legally incorrect. Specifically, defendant argues that the trial judge advised that there were four elements that the State had to prove beyond a reasonable doubt. Those elements are 1) that the defendant fortified or maintained a structure in a fortified condition; 2) that the defendant maintained the structure for the purpose and engaged in prohibited CDS activities; 3) that the defendant owned, leased, occupied or controlled the fortified structure; and 4) that the defendant acted knowingly. Defendant argues, however, that there are two ways in which a person can be guilty under the statute. First, by fortifying or maintaining in a fortified condition a structure for the purpose of distributing or manufacturing or possessing CDS with the intent to distribute. Second, a person may be guilty under N.J.S.A. 2C:35-4.1 if he violates an enumerated CDS offense in a structure that he owns, leases, occupies or controls that has been fortified.
Defendant also takes issue with the trial judge's statement that if the jury found defendant guilty of possession of CDS with intent to distribute, the second element of the fortified structure offense would be satisfied. He also disagrees with the trial judge's definition of "ownership." He contends that ownership does not include possession. Finally, defendant objects to the response to the jury's request that the judge clarify the fortified structure instruction. Notably, no objection was lodged to any portion of the instruction or the responses to the jury's questions.
We need not linger on the precise terms of the fortified structure instruction. We are satisfied that it was not legally erroneous, although it was capable of improvement. Indeed, in our unreported opinion in co-defendant Kareem Tucker's appeal, we noted that the trial judge should have used the statutory definition of maintenance of a fortification.[2] There is, moreover, a distinction between an incorrect instruction and one capable of improvement. State v. Delibero, 149 N.J. 90, 106, 692 A.2d 981 (1997). When the instruction is sufficiently clear, unambiguous and helpful when viewed as a whole, the verdict will stand, even if the charge was capable of improvement. State v. Pleasant, 313 N.J.Super. 325, 335, 712 A.2d 1215 (App.Div.1998), aff'd, 158 N.J. 149, 728 A.2d 223 (1999).
It is noteworthy in this case that defendant would have been convicted even if the trial judge had delivered the charge as currently constructed by defendant.[3] Moreover, while ownership may not be so broadly construed to include mere possession, there was no error because the statutory *421 definition of maintenance of a fortified structure required more than mere possession of a structure. Finally, the response to the questions posed by the jury assisted defendant because the response emphasized that mere presence was not sufficient.
Defendant argues Detective Franklin's expert opinions that the premises were fortified and that defendant possessed drugs for the purpose of distribution were improperly admitted. He insists that the subject matter did not require the assistance of an expert, that the testimony impermissibly interfered with the jury's function because Detective Franklin gave an opinion of defendant's guilt, that the probative value of the testimony was outweighed by its prejudicial impact, and that the detective was not qualified to render an opinion on fortified premises. Defendant did not lodge an objection to this testimony at trial; therefore, we must evaluate the alleged error in accordance with the plain error standard. Defendant has not demonstrated that the admission of this testimony was "clearly capable of producing an unjust result." R. 2:10-2.
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." N.J.R.E. 702. In fact, opinion testimony may be permitted even if it embraces the ultimate issue to be determined by the trier of fact. N.J.R.E. 704. Whether such testimony is admissible rests in the trial court's discretion. State v. Summers, 176 N.J. 306, 312, 823 A.2d 15 (2003). While courts generally agree that expert testimony about drug-trade practices is admissible given that most jurors are unschooled in the practices of drug dealers, the extent and nature of such testimony may differ across cases. See, e.g., State v. Berry, 140 N.J. 280, 293-95, 658 A.2d 702 (1995).
Detective Franklin was qualified as an expert in the field of narcotics and narcotics distribution. Franklin testified to the ultimate fact issues that the drugs were possessed for distribution purposes and that the premises were fortified. Defendant argues that the trial court erred in admitting Detective Franklin's expert testimony because the subject was not one which requires the assistance of an expert; by giving his opinion, Franklin usurped the jury's power; the prejudicial effect of the testimony outweighed its probative value; and the opinion exceeded the bounds of Franklin's expertise.
As discussed above, information regarding the practices of drug-dealers has been considered specialized knowledge for which an expert opinion may be sought to assist a jury. State v. Odom, 116 N.J. 65, 73, 560 A.2d 1198 (1989). An expert may be asked to give an opinion, based on the facts in evidence, whether the drugs were possessed for distribution or personal consumption. Summers, supra, 176 N.J. at 314, 823 A.2d 15. "His or her opinion can be `expressed in terms of ultimate issues of fact, namely, whether drugs were possessed with the intent to distribute,' but it cannot contain an explicit statement that `the defendant is guilty of the crime charged under the statute.'" Id. at 314-15, 823 A.2d 15 (quoting Odom, supra, 116 N.J. at 80, 560 A.2d 1198). The jury must be instructed of its role as the sole fact-finder of the case and the proper weight to be given to expert opinion. Id. at 315, 823 A.2d 15.
Similar to the present case, the defendant in Summers had been convicted of *422 drug charges, including possession and distribution of CDS. Id. at 308, 823 A.2d 15. The issue before the Supreme Court was whether the expert overstepped her bounds and assumed a fact-finding role by expressing "an impermissible opinion on guilt." Ibid. Like Franklin, the expert in Summers expressed her opinion, based on a hypothetical, that the drugs were possessed for the purpose of distribution. Ibid. The Court held that a detective's expert opinion on the ultimate fact issue of whether the drugs seized from defendant were possessed with intent to distribute was admissible. Id. at 315-16, 823 A.2d 15.
Several factors led to the Court's ruling. First, the expert had been properly qualified in the field of narcotics. Id. at 315, 823 A.2d 15. Next, the Court noted that the hypothetical had been limited to facts presented during the trial. Ibid. Moreover, the Court stated that aside from the expert's testimony, "substantial evidence of defendant's guilt" had been produced. Id. at 316, 823 A.2d 15. The Court weighed the asserted error against all the evidence presented and concluded that the alleged error in the expert's testimony would not warrant reversal. Ibid. Finally, the Court was not persuaded that the probative value of the testimony was outweighed by any undue prejudice. Ibid.
Like the expert in Summers, Franklin testified that the drugs were possessed with the intent to distribute. Defendant does not dispute Franklin's narcotics and narcotics distribution expertise, but does challenge his expertise regarding fortification. Franklin never stated an opinion that the premises were fortified; rather, Franklin discussed the "fortified premises" as a basis for his opinion that the intent of defendant was to distribute the CDS, a subject about which he did possess expertise. Regardless, Franklin's expertise qualified him to discuss customs and behaviors of drug dealers, including the use of fortifications. Similar to Summers, the State relied upon the use of a hypothetical which was limited to the facts presented at trial. Even without Franklin's testimony, there was sufficient evidence of defendant's guilt  he was the only person on the inside of a building that the police were unable to penetrate with a sixty-pound battering ram, drugs and drug paraphernalia were found on the premises, and the police had observed a transaction. As was found in Summers, when this asserted error is considered against all the evidence presented in the case, it is clear that Franklin's testimony does not warrant reversal.
Recently, the Court reiterated its holdings in Odom, Berry, and Summers. In State v. Nesbitt, 185 N.J. 504, 888 A.2d 472 (2006), the Court considered a hypothetical question that relied on terminology from the criminal statute. Although the hypothetical tracked too closely the exact language of the statute, id. at 517, 888 A.2d 472, the Court did not find plain error because "the hypothetical never referred explicitly to defendant and was limited to facts presented at trial." Id. at 519, 888 A.2d 472. The Court also held that expert testimony was particularly appropriate when the defendant did not personally hold the drugs, did not personally give the drugs to the officer, and did not accept payment from the officer. Id. at 515, 888 A.2d 472. Like Nesbitt, the nature of the fortifications and the use of fortified structures in the drug trade are likely beyond the experience of the average juror. Therefore, we find no error in the admission of Detective Franklin's expert testimony.
Finally, defendant contends that the sentence requiring imposition of a consecutive term for a conviction of N.J.S.A. *423 2C:35-4.1 is unconstitutional because it violates the double jeopardy prohibition and is otherwise excessive. We disagree.
The judge imposed consecutive four-year terms of imprisonment. Defendant contends that N.J.S.A. 2C:35-4.1e (the non-merger provision) is unconstitutional because it violates the due process and double jeopardy provisions of the New Jersey Constitution and that Counts Two and Three should, therefore, be merged. Defendant did not raise this issue when sentence was imposed.
N.J.S.A. 2C:35-4.1e provides in relevant part:
Nothing herein shall be deemed to preclude, if the evidence so warrants, an indictment and conviction for a violation of chapters 11, 12, 17, and 39 of this title, or any other law. Notwithstanding the provisions of N.J.S. 2C:1-8, N.J.S. 2C:44-5 or any other provisions of law, a conviction arising under this section shall not merge with a conviction for a violation of any section of chapter 35 of Title 2C of the New Jersey Statutes, or for conspiring or attempting to violate any section of chapter 35 of Title 2C of the New Jersey Statutes, and the sentence imposed upon a violation of this section shall be ordered to be served consecutively to that imposed for any other conviction arising under any section of chapter 35 of Title 2C of the New Jersey Statutes or for conspiracy or attempt to violate any section of chapter 35 of Title 2C of the New Jersey Statutes, unless the court, in consideration of the character and circumstances of the defendant, finds that imposition of consecutive sentences would be a serious injustice which overrides the need to deter such conduct by others. If the court does not impose a consecutive sentence, the sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution.
[N.J.S.A. 2C:35-4.1e (emphasis added).]
The plain language of the statute clearly expresses the Legislature's intent to impose consecutive sentences for fortifying or maintaining a fortified structure within which drugs are sold, N.J.S.A. 2C:35-5a(1), -5b(3), and also for possession of drugs with intent to distribute, N.J.S.A. 2C:35-4.1c. Regarding cumulative sentences from a single trial, the Double Jeopardy Clause does no more than prevent sentencing to greater punishment than the Legislature intended. Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983). To this end, the Supreme Court noted:
[The] question of what punishments are constitutionally permissible is no different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.
[Id. at 368, 103 S.Ct. at 679, 74 L.Ed.2d at 543 (quoting Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981)).]
New Jersey follows federal double-jeopardy principles, which require "a two-step analysis to determine whether multiple punishment violates double jeopardy." State v. Dillihay, 127 N.J. 42, 47, 601 A.2d 1149 (1992) (citing Hunter, supra, 459 U.S. at 368-69, 103 S.Ct. at 679, 74 L.Ed.2d at 543-44).
The first step requires the court to consider whether the legislature intended to impose multiple punishments. Albernaz, supra, 450 U.S. at 344, 101 S.Ct. at 1145, 67 L.Ed.2d at 285. The federal double-jeopardy guarantee "serves principally as a restraint on courts and prosecutors." *424 Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 193 (1977). Therefore, "[w]here . . . a legislature specifically authorizes cumulative punishment under two statutes,. . . a court's task of statutory construction is at an end . . . and the trial court or jury may impose cumulative punishment." Missouri v. Hunter, supra, 459 U.S. at 368-69, 103 S.Ct. at 679, 74 L.Ed.2d at 544.
[Id. at 47-48, 601 A.2d 1149.]
If the legislative intent is unclear whether multiple punishments are allowed, however, the court then applies the Blockburger[4] test to determine whether the defendant is unconstitutionally faced with multiple punishment for the "same" offense. Dillihay, supra, 127 N.J. at 48, 601 A.2d 1149. "In the absence of legislative intent to authorize cumulative punishment, to punish a defendant twice for the same offense is unconstitutional." Ibid. (citing Hunter, supra, 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d at 542 (citing Whalen v. United States, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715, 723 (1980))).
Here, because this issue was not raised before the trial court, the scope of review on appeal is narrow. Although an appellate court will consider allegations of error not brought to the trial judge's attention, we frequently decline to consider issues that were not presented at trial. Generally, issues not raised below, even constitutional issues, will not ordinarily be considered on appeal unless they are jurisdictional in nature or substantially implicate public interest. See, e.g., Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973); Ferraro v. Demetrakis, 167 N.J.Super. 429, 431-32, 400 A.2d 1227 (App.Div.), certif. denied, 81 N.J. 290, 405 A.2d 834 (1979). An issue not raised below may be considered by the court if it meets the plain error standard or is otherwise of special significance to the litigant, to the public, or to achieving substantial justice, and the record is sufficiently complete to permit its adjudication. See, e.g., Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998) (Affidavit of Merit); State v. Micheliche, 220 N.J.Super. 532, 533 A.2d 41 (App.Div.) (absence of jury instruction on the legal effect of voluntary intoxication and a lesser included offense), certif. denied, 109 N.J. 40, 532 A.2d 1108 (1987).
The plain language of the statute, namely that the counts "shall not merge" and "shall be ordered to be served consecutively" clearly expresses the Legislature's intent to impose consecutive sentences for fortifying or maintaining a fortified structure within which to sell drugs, N.J.S.A. 2C:35-4.1c, and also for possessing drugs with intent to distribute, N.J.S.A. 2C:35-5a(1), -5b(3). The legislation reflects the understanding that illicit drugs can be possessed without the added measures of resort to fortifications and the heightened prospect of violence in the course of apprehension of those utilizing fortified premises. Neither due process nor double jeopardy was violated in ordering defendant to serve Counts Two and Three consecutively. As such, defendant may be punished for fortifying or maintaining a fortified structure within which to sell drugs and also for possessing the drugs with intent to distribute.
In addition, the sentence is not excessive. Despite the fact that this was defendant's fourth CDS conviction, the judge imposed a sentence at the mid-range for a third degree offense. Defendant's record precluded an evaluation of the aggravating *425 and mitigating factors to allow imposition of a lesser term. Therefore, we discern no abuse of the discretion vested in the sentencing judge. State v. Roth, 95 N.J. 334, 364-66, 471 A.2d 370 (1984).
Affirmed.
NOTES
[1] Tucker was indicted with defendant. Following a joint trial, Tucker was convicted of possession of cocaine, contrary to N.J.S.A. 2C:35-10a(1), possession of cocaine with intent to distribute, contrary to N.J.S.A. 2C:35-5a(1) and 2C:35-5b(3); and maintaining a fortified presence, contrary to N.J.S.A. 2C:35-4.1c. He is serving an aggregate ten-year term of imprisonment with a four-year period of parole ineligibility. On appeal, his conviction and sentence were affirmed. State v. Tucker, No. A-5750-02 (App. Div. June 21, 2005).
[2] Tucker, supra, slip op. at 19.
[3] Interestingly, co-defendant Tucker argued that the statute should not be construed disjunctively.
[4] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).