# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4550-19

STATE OF NEW JERSEY
IN THE INTEREST OF G.U.V.,
a juvenile.

_____

Submitted May 3, 2022 – Decided August 18, 2022

Before Judges DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket Nos. FJ-11-0665-19, FJ-11-0669-19, and FJ-11-0671-19.

Joseph E. Krakora, Public Defender, attorney for appellant G.U.V. (Kevin S. Finckenauer, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent State of New Jersey (Matthew S. Samel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a bench trial on three related juvenile complaints, the trial court

found G.U.V. delinquent with respect to two counts of third-degree arson, two

counts of fourth-degree criminal mischief, and three counts of fourth-degree criminal trespass.

G.U.V. appealed, arguing for the first time before us that the trial court erred by admitting certain expert testimony, as well as by admitting other lay testimony which G.U.V. contended violated his Sixth Amendment right to confrontation as well as other evidential rules of exclusion. G.U.V. also alleges on appeal that the cumulative impact of the alleged evidential errors denied him a fair trial. Finally, G.U.V. argues error in the final disposition. We affirm on the merits and reverse and remand for entry of an amended disposition consistent with the principles of merger.

In April 2019, a series of fires were set in and around Princeton University at Jadwin Hall, in a classroom at Fine Hall, and in the bathroom of the Institute for Advanced Studies (IAS). A police investigation into the fires determined they were started by the juvenile, G.U.V., and juvenile co-defendant, A.M.

Evidence at trial implicating G.U.V. came primarily from his co-defendant, A.M.[1] He testified that he had been friends with G.U.V. for years. He described how the two juveniles meandered in and out of three campus

---

[1] A.M. testified pursuant to a plea agreement with the State in which he received juvenile probation.

A-4550-19

buildings and what they did at each location. A.M. testified that he and G.U.V. went to the Princeton University campus to play video games on the computers in the campus library, which was open to the public. After playing computer games they next went to a Jadwin Hall classroom, A-10. While in the classroom, they smoked cigarettes and marijuana, scrawled messages on the chalkboard, and ate chips and drank soda.[2] A.M. testified that both he and G.U.V each put out cigarettes on a computer monitor in the classroom. The juveniles eventually left Jadwin Hall and next went to the twelfth floor of Fine Hall and into classroom 1201 "to chill." A.M. testified that while in room 1201, he noticed a piece of paper on fire near where G.U.V. was standing. A.M. went looking for water to put out the fire, could not find any, and told G.U.V. that they should leave. A.M. and G.U.V. then left the building and rode their bikes to the IAS building to get away from the fire.

Once they arrived at the IAS building, they found an open door and went inside to use a bathroom. They found one and entered. A.M. stated that while

---

[2] A Princeton student, Alan Chung, testified at trial. He stated that he was looking for an empty classroom to study. He walked into room A-10 and smelled smoke. He went to the front of the classroom and saw two males eating from a bag of chips in the right corner of the room. He gave a description of each person he saw, and he described a distinctive backpack which one of them was carrying. A backpack matching Chung's description was recovered from the juveniles when they were apprehended.

A-4550-19

in the bathroom washing his hands, he heard a lighter "go off" and turned around to see flames from the stall that G.U.V. occupied. After seeing the flames, A.M. ran out of the bathroom and G.U.V. followed. A.M. testified that he asked G.U.V. if he put out the fire, and G.U.V. said he did. The two juveniles rode their bikes away from campus, passing Princeton Public Safety Officer Mark Davila on their way.[3]

At trial, the State produced an arson expert, Detective Anthony Sturchio of the Mercer County Prosecutor's Office. Without objection, Detective Sturchio was qualified as an expert on fire origin and fire causation. He reviewed photos of each of the burned sites but did not visit the sites. He testified that, in his opinion, the fires were caused by human intervention, and he ruled out all other causes.

The trial court made credibility findings as to A.M. and the other witnesses who testified. In a thorough and meticulous oral opinion, the court adjudicated G.U.V. delinquent on multiple counts of arson, criminal mischief,

---

[3] At trial, Officer Davila testified that while he was en route to respond to the IAS fire alarm, two individuals on bikes passed him approximately "one to two feet" away. The bicyclists were traveling in tandem away from the building. Detective Basatemer of the Princeton Police Department also testified at trial. Through him surveillance video was introduced depicting two persons approaching the IAS building by bicycle at 12:39 a.m. The same video clip depicts two persons on bikes riding away from the IAS building at 1:13 a.m.

A-4550-19

and criminal trespass.  The court found G.U.V. not guilty on two counts of second-degree aggravated arson and two counts of third-degree burglary, reviewing the elements of each acquitted charge and stating its reasons for concluding that the State did not meet its burden of proof.

The court sentenced G.U.V. to the custody of the Juvenile Justice Commission for two years.  The disposition included concurrent terms of two years for each count of third-degree aggravated arson and one year for each fourth-degree offense.  Restitution was ordered in a separate hearing.

On appeal, G.U.V. argues the following points:

POINT I

THE STATE'S ARSON EXPERT IMPROPERLY TESTIFIED THAT IT WAS G.U.V. AND [A.M.] WHO COMMITTED THE FIRES WITHOUT ANY INDEPENDENT KNOWLEDGE FOR MAKING THAT ASSERTION. (NOT RAISED BELOW)

POINT II

DETECTIVE LANZI'S TESTIMONY THAT HE RECEIVED INCRIMINATING INFORMATION FROM A PRINCETON STUDENT WHO WAS NOT CALLED AS A WITNESS VIOLATED THE RULE AGAINST HEARSAY, CONFRONTATION RIGHTS, AND BRANCH/BANKSTON PRINCIPLES. (NOT RAISED BELOW)

POINT III

THE CULMINATIVE IMPACT OF THE ERRORS AT TRIAL DENIED G.U.V. DUE PROCESS AND A FAIR TRIAL. (NOT RAISED BELOW)

POINT IV

WHEN RENDERING ITS VERDICT, THE TRIAL COURT MERGED THE CRIMINAL MISCHIEF CONVICTION WITH THE ARSON CONVICTION UNDER COMPLAINT FJ-11-671-19. AT SENTENCING, HOWEVER, THE TRIAL COURT SENTENCED G.U.V. TO ONE-YEAR IN A TRAINING SCHOOL FOR THE MERGED CONVICTION AND FAILED TO REFLECT THE MERGER IN THE FINAL DISPOSITION. (NOT RAISED BELOW)

Although we may consider allegations of errors or omissions not brought to the court's attention if they meet the plain error standard under Rule 2:10-2, we frequently decline to consider issues not raised below nor properly presented on appeal. See State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006). Recognizing that we are not bound to address arguments on appeal not raised in the trial court, we proceed with an analysis of G.U.V.'s first three points on appeal using the plain error standard.

G.U.V. contends the trial court erred in admitting improper testimony from the State's arson expert, Detective Sturchio. We disagree. At one point during his direct examination the colloquy between the arson expert and the

6

State veered into concerning territory: "[s]o based upon my review of this incident, as well as other incidents which the defendant and co-defendant were involved in . . . I believe this was not an accidental fire based upon the pattern of the deliberately set fires that [G.U.V.] was involved in."

In its oral decision, the trial court expressly identified the portion of Detective Sturchio's testimony which it relied on to reach its delinquency finding, noting the detective's conclusion that the fires were caused by human intervention. The court, as the finder of fact, properly rejected the portion of the detective's testimony which could be argued to constitute speculation about G.U.V.'s involvement in starting the fires. The court had more than sufficient other evidence to tie G.U.V. to the arson, which included: A.M.'s eyewitness testimony detailing G.U.V.'s actions at each of their stops; the testimony of Chung and Officer Davila; and the IAS surveillance video. The last two pieces of evidence led to permissible inferences which placed the co-defendants in Jadwin Hall at the start of this misadventure and on bicycles fleeing IAS at its conclusion.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015). We afford deference "to a trial court's decision to admit expert testimony,

reviewing it against an abuse of discretion standard." Id. at 53 (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)). Had this issue been raised below, we would have concluded that the trial court did not abuse its discretion in admitting the arson expert's testimony. Recognizing that the plain error standard controls this analysis, we find no unjust result.

G.U.V. next argues that one of the State's witnesses, Detective James Lanzi, testified that he received incriminating information from a Princeton student, Naying Yee, who did not testify at trial. G.U.V. argues that Detective Lanzi's testimony constituted improper hearsay and violated his Sixth Amendment Confrontation Clause rights. See State v. Branch, 182 N.J. 338 (2005). We are not persuaded.

Detective Lanzi testified at trial that his supervising officer ordered him to interview the two Princeton students, Chung and Yee. The sole extent of his testimony about the two interviews is contained below:

> Q. Okay. What did you [do] as a result of receiving that email?
>
> A. I reached out to both the students. I scheduled an interview with Allen Chung . . . and with Naying Yee . . . .
>
> Q. Okay. Did you have the opportunity to interview them?

A-4550-19

A. I did.

Q. Okay. And what happened as a result of those interviews?

A. I documented my report, the conversation I had with them . . . and . . . what they observed the day they were in the building.

The State concluded its direct examination of Lanzi. Defense counsel began a brief cross-examination, which ended abruptly after the trial court sustained an objection to defense counsel's question about matters outside the scope of direct examination. After the objection was sustained, defense counsel asked a question about Detective Lanzi's years of law enforcement experience, then asked no further questions.

Detective Lanzi did not testify about what if anything he learned from Yee, nor did he repeat any statement he may have taken from Yee. We find no hearsay in the trial record from which we could conclude that the principles set forth in Branch were violated. Id. at 349. We certainly find no plain error.

Given our findings as to Points I and II of G.U.V.'s appeal, we need not address Point III.

We pivot to G.U.V.'s appeal from his disposition. We deferentially review a trial court's sentencing determination and do not substitute our judgment for that of the sentencing court. State v. Rivera, 249 N.J. 285, 297 (2021). We

affirm unless the sentencing guidelines are violated, the aggravating and mitigating factors found are not based upon competent credible evidence in the record, or the trial court's application of the sentencing guidelines make the sentence so clearly unreasonable as to shock the judicial conscience. State v. Roth, 95 N.J. 334, 364-65 (1984).

Under juvenile complaint no. FJ-11-671-19, G.U.V. contends that his criminal mischief adjudication should have merged with his arson adjudication, eliminating separate sentences for the two adjudications. The record shows the trial court properly merged the two, but then it mistakenly ordered G.U.V. to serve one year in the custody of the Juvenile Justice Commission on the criminal mischief adjudication. Next, the trial court incorporated the errant sentence on the final disposition order. We agree with G.U.V. that this aspect of the disposition order requires correction.

"The failure to merge convictions results in an illegal sentence for which there is no procedural time limit for correction." State v. Romero, 191 N.J. 59, 80 (2007). Accordingly, the matter shall be remanded for the limited purpose of modifying the final disposition order, so as to incorporate the proper merger for juvenile complaint no. FJ-11-671-19 and vacate G.U.V.'s sentence for the lesser-included offense of criminal mischief.

A-4550-19

Affirmed in part, reversed and remanded in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4550-19