**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2041-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHNNIE L. DAVILA,

    Defendant-Appellant.

_____

Submitted April 16, 2024 – Decided May 6, 2024

Before Judges Mayer and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 19-05-0642.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from his conviction for fourth-degree theft by unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10(d). We affirm.

On September 20, 2018, Mustapha Gbassa left his car running, with the keys in the ignition, while running an errand inside a store. Once he exited the store, his car was gone. He did not see who took the car, but the store had a video surveillance system that recorded activity inside and outside the store.

Westampton Township Police Detective, Thomas Polite, responded to the store as well as Willingboro Township Police, where Gbassa's vehicle was found. The store surveillance footage showed a Black man—with tattoos and braided hair, wearing green pants and shirt—exit from red sedan and enter Gbassa's vehicle. The suspect, along with a second individual who also exited the red sedan, drove away from the store in Gbassa's car.

On May 21, 2019, defendant was charged with third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a). Trial began on April 28, 2022. The State presented testimony from Mustapha Gbassa, Detective David Kohler, and Detective Polite; defendant did not testify. Detective Kohler of the Burlington County Prosecutor's Office testified that he managed the digital forensic laboratory, and was asked to assist in recording portions of a publicly available Facebook profile under the name of "Jay Red." Detective Kohler testified his

office used a program to record publicly available information in social media. Using this program, Detective Kohler captured multiple photographs regarding "Jay Red's" public Facebook profile. The profile had publicly available images that showed an individual with a similar appearance to the suspect around the time of the crime. Kohler testified the images were of a "[B]lack male with a beard, [and] dreadlocks."

Detective Polite testified upon being assigned the case, he began his investigation by reviewing surveillance videos of the store. Thereafter, he issued a "flash"—a notice that goes to other jurisdictions—which contained the "suspect['s] description, a description of the car, how it was taken, [and] how long ago it was taken, so all jurisdictions [could] look for that vehicle." Through this method, the stolen vehicle was located on Garrett Lane.

Detective Polite testified he reviewed the surveillance videos "many times." He reviewed the videos "[t]o identify the subjects that took the car and to put out . . . information concerning [the suspect's] description." From the videos, Polite noticed "the clothing description of the subject" and was able to "get a fairly good description." He observed the suspect "was a light-skinned [Black] male with braids, rather unique looking, with . . . [a] green top, green bottom and black sneakers." Polite watched another video from within the store

3 <span>A-2041-22</span>

and he observed the suspect also had facial hair and "possibly a tattoo on his right [fore]arm."

Detective Polite testified after getting still pictures of the suspect from the surveillance videos, he "put[] [the pictures] out[,] so the police community [could] look at it and . . . identify" the suspect. Thereafter, he investigated different databases to identify the person in the still shots. In February 2019, Detective Polite used "law enforcement databases to try to identify [the suspect]." Polite was able to identify defendant as a suspect on February 26, 2019, through his investigation relating back to the person in green from the surveillance videos.

At trial, Detective Polite was also shown two photographs of defendant: (1) a picture from a driver's license, and (2) a picture from the Facebook page of "Jay Red" as described by Detective Kohler in his testimony. Polite stated he saw the Facebook picture as part of his investigation. He testified after obtaining the photographs he further investigated defendant by accessing "all the law enforcement databases with information pertaining to him" and put out another "flash" with defendant's picture to get "some more information about him." Through this additional "flash," Detective Polite was able to determine that at the time of the crime, defendant lived near where Gbassa's car was recovered.

4

During deliberations, the jury asked for portions of the surveillance video from the store, and readbacks of Detective Polite's testimony. The jurors requested a second review of one of the videos after hearing the testimony readback. The jury then requested to have one of the videos replayed an additional time and asked for the replay of a separate video of the store. Thereafter, the jury returned its verdict, acquitting defendant of theft by unlawful taking, but finding him guilty of unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10(d). Defendant was sentenced to an eighteen-month term.

Defendant raises the following issue on appeal:

> POINT I
> IT WAS PLAIN ERROR TO ALLOW THE INVESTIGATING DETECTIVE TO OPINE THAT THE SURVEILLANCE VIDEO DEPICTED DEFENDANT WHERE IDENTIFICATION WAS THE ONLY CONTESTED ISSUE IN THE CASE, AND WHERE THE VIDEO WAS CLEAR AND THE DETECTIVE HAD NO PRIOR KNOWLEDGE OF DEFENDANT. (Not raised below.)

"Generally, issues not raised below, even constitutional issues, will not ordinarily be considered on appeal unless they are jurisdictional in nature or substantially implicate public interest." State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006). "An issue not raised below may be considered by the

5

court if it meets the plain error standard or is otherwise of special significance to the litigant, to the public, or to achieving substantial justice, and the record is sufficiently complete to permit its adjudication."  Ibid.  Evidence that went unchallenged will constitute plain error if it was "clearly capable of producing an unjust result."  R. 2:10-2.  "Thus, the error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached."  State v. Singh, 245 N.J. 1, 13 (2021) (citing State v. R.K., 220 N.J. 444, 456 (2015)).

Under N.J.R.E. 701, Detective Polite's lay opinion testimony is admissible if it:  "(a) is rationally based on the witness' perception; and (b) will assist in understanding the witness' testimony or determining a fact in issue."  To satisfy these conditions, the "witness must have actual knowledge, acquired through his or her senses, of the matter to which [they] testif[y]."  State v. Sanchez, 247 N.J. 450, 466 (2021) (quoting State v. LaBrutto, 114 N.J. 187, 197 (1989)).  Additionally, the second condition precludes "lay opinion on a matter 'as to which the jury is as competent as [the witness] to form a conclusion."  Id. at 469-70 (alteration in original) (quoting State v. McLean, 205 N.J. 438, 459 (2011)).

A-2041-22

Defendant argues Detective Polite was improperly permitted to "give his opinion that the surveillance video depicted defendant stealing the victim's car." In addition, defendant argues the testimony was prejudicial because Polite was the investigator, giving his testimony undue weight. Since identification was the central issue in the case, defendant further contends the testimony "unfairly tipped the balance" and was "clearly capable of producing an unjust result." Furthermore, defendant asserts the detective's testimony "usurped the jury's function" and informed the jury Detective Polite "arrested defendant because Polite believed defendant looked like the person depicted in the surveillance video."

Relying on Sanchez, defendant contends the four factors to determine the admissibility of lay opinion testimony weigh against the admission of the detective's testimony. 247 N.J. at 470-73. Under Sanchez, the four factors used for identification are: (1) how much contact the witness had with defendant; (2) whether there was a change in defendant's appearance that the lay opinion may clarify and be helpful to the jury; (3) whether there were additional witnesses to identify the defendant; and (4) the quality of the video at issue. Ibid. Defendant argues Detective Polite had no prior knowledge of defendant or knowledge of defendant at any particular point in time. Additionally, defendant contends there

were no additional witnesses, but the surveillance videos were clear enough that Detective Polite's testimony and narration were unnecessary.

Furthermore, defendant argues the final jury charge also exacerbated the error. Detective Polite did not identify the defendant in court, but instead matched a person in the videos with a person in a computer database. Additionally, the identification was not based on Polite's observations of the suspect at the time of the offense, but instead of the videos, which were also shown to the jury.

"In an identification case, it is for the jury to decide whether an eyewitness credibly identified the defendant." State v. Lazo, 209 N.J. 9, 24 (2012). Recently, in State v. Watson, the Court held an officer who provides video narration, is not considered an eyewitness to the crime, but a witness that is "commenting on an independent source of evidence," in this case the store's surveillance video. 254 N.J. 558, 601 (2023). An investigator who has reviewed the surveillance video many times prior to trial, who then offers testimony based on their perception of the video, has satisfied N.J.R.E. 701's "perception" and "personal knowledge" requirements. Ibid. Here, Detective Polite testified he watched the videos "many times." He explained he watched the videos for evidence and to identify the suspect. Thus, under Watson, Detective Polite

satisfied the threshold requirement to offer lay opinion testimony about what he saw in the surveillance videos.

Under N.J.R.E. 701, lay witness testimony also needs to assist the jury. "An investigator who has carefully analyzed a video and can draw a jury's attention to particular spots," such as the suspect's appearance, "can be quite helpful to the finder of fact." Watson, 254 N.J. at 601. As part of his investigation, detective Polite described how he took stills of the videos to try and identify the suspect. He described the person seen in the videos, but stated he did not know who the suspect was at the time. His description included characteristics like the individual's beard and possible tattoos. Detective Polite testified he began to use law enforcement databases to identify the suspect, which led him to identifying defendant as the suspect. Polite reviewed the pictures of defendant, as pulled from the videos and social media, and discussed some of the characteristics between the pictures and the videos that resembled each other.

"[I]nvestigators may not offer their views on factual issues that are reasonably disputed. Those issues are for the jury to decide." Id. at 603 (citation omitted). "[A] witness cannot testify that a video shows a certain act when the opposing party reasonably contends that it does not." Ibid. Detective Polite

never identified defendant as the individual in the videos, but instead provided descriptions of the suspect and then drew the physical comparisons between defendant's photo and the videos. The jury had to decide whether it was defendant in the videos. To reach a decision, the jury watched the videos, multiple times. The jury also observed defendant in the courtroom, when he was asked to take off his mask and roll up his sleeves for the jury to see some identifying characteristics.

Finally, we reject the argument that the jury instruction exacerbated the identification as invited error. In reviewing the jury charges, defendant argued, "Identity is an issue here. If the jury doesn't have any understanding of identification in the jury charge, it may be difficult for them to come to the conclusion whether or not [defendant] is the person in the video." Thus, even if we were to conclude the charge was erroneous, trial errors "induced . . . by defense counsel ordinarily are not a basis for reversal on appeal." State v. Corsaro, 107 N.J. 339, 345 (1987).

To the extent we have not addressed defendant's remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2041-22