**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3724-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALPHONSE J. ANDERSON, a/k/a,
ALPONSE ANDERSON,
ANDERWSON J. ALPHONSE,
ANDERSON ALPHONSE, and,
ANDERSON ALPONSE,

     Defendant-Appellant.

_____

Submitted December 2, 2019 – Decided March 6, 2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-06-0388.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Kelsey Alina Ball, Special

Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Alphonse Anderson, appeals from his trial convictions for possession of controlled dangerous substances with intent to distribute and simple possession of those same substances. One of the critical issues at trial was whether defendant resided in the apartment where the drugs were found during the execution of a search warrant. Defendant on appeal contends that the trial court erred in denying his Fourth Amendment motion to suppress. Defendant does not challenge the validity of the search warrant or the manner in which the search of the apartment was executed. Rather, he contests the seizure of a house key found on his person that linked him to the apartment. That seizure occurred at the time of the raid but a block away from the apartment.

Defendant also contends the trial court erred in denying his motion to exclude medical correspondence found during the warrant search that also linked him to the apartment. That motion was not based on the Fourth Amendment but rather on the prosecutor's failure to disclose the documents in a timely manner. Finally, defendant contends the sentence imposed is illegal and excessive.

2

We have reviewed the record in light of the applicable legal standards and conclude that the trial court properly denied defendant's Fourth Amendment motion to suppress physical evidence. The house key at issue was seized during the course of a lawful "Terry"[1] stop that escalated to an arrest when the reasonable suspicion that justified the detention ripened into probable cause.

We also conclude that the trial court did not abuse its discretion in denying defendant's motion to exclude medical documents bearing defendant's name based on the State's failure to turn the documents over in discovery in a timely fashion. The remedy fashioned by the trial court for the discovery violation—providing defense counsel an opportunity to review the documents before they were admitted into evidence—was adequate given the surrounding circumstances. Although we do not condone the prosecutor's failure to obtain the discoverable documents from the Elizabeth Police Department in a timely fashion, we conclude defendant was not unfairly prejudiced by the discovery violation.

Although we affirm defendant's trial conviction, we agree with him that the trial court imposed an illegal sentence. As the State acknowledges, the sentencing court was required to merge the convictions for simple possession

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

A-3724-17T2

and possession with intent to distribute. Relatedly, the sentencing court improperly imposed a concurrent extended term of imprisonment pursuant to N.J.S.A. 2C:43-6(f) on defendant's simple possession conviction, even though that offense is not eligible for that form of enhanced punishment. We therefore remand the matter to the trial court to merge the convictions and correct the sentence.

## I.

On February 21, 2017, police executed a search warrant at an apartment from which codefendant Levar Davis had distributed illicit drugs.[2] Police found marijuana, cocaine, heroin, drug paraphernalia, and cash in the apartment. Police also seized a prescription bottle with defendant's name on it and correspondence addressed to defendant.

Defendant moved to suppress physical evidence seized from his person at the time of the police raid while he was detained a block away from the apartment. The trial court convened an evidentiary hearing after which the trial

---

[2] Codefendant Davis is not a party to this appeal.

judge denied defendant's motion, concluding that defendant had been lawfully stopped, frisked, and arrested.

After trial, a jury convicted defendant of possession of a controlled dangerous substance, in violation of N.J.S.A. 2C:35-10(a)(1), and possession with intent to distribute, in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3). The trial court granted the State's application for imposition of a mandatory extended term pursuant to N.J.S.A. 2C:43-6(f) and sentenced defendant to two concurrent eight-year prison terms, each with a four-year period of parole ineligibility.

Defendant now raises the following contentions for our consideration:

> POINT ONE
>
> THE TRIAL COURT IMPROPERLY DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED AS A RESULT OF HIS INVESTIGATIVE DETENTION.
>
> POINT TWO
>
> DEFENDANT WAS UNDULY PREJUDICED BY THE TRIAL COURT'S ADMISSION OF BELATEDLY PRODUCED DISCOVERY MATERIALS.
>
> POINT THREE
>
> THE SENTENCE IMPOSED ON DEFENDANT IS ILLEGAL AND EXCESSIVE.

II.


A.

We first address defendant's Fourth Amendment contention. The gravamen of defendant's argument is that he was unlawfully stopped by two police officers who were not personally aware of the facts justifying his detention.

The circumstances leading to defendant's encounter with the officers are thoroughly recounted in the trial court's written opinion and need only be summarized briefly in this opinion. On February 21, 2017, officers assigned to the Elizabeth Police Department Narcotics Division executed a search warrant at one of the apartments in a two-family house on Olive Street. The Superior Court judge who issued the warrant authorized a "no knock"[3] entry of the premises.

---

[3] See generally State v. Johnson, 168 N.J. 608 (2001) (explaining the circumstances when police executing a search warrant of a residence are authorized to dispense with the general rule that requires them to announce their identity and purpose before entering). As noted, defendant does not challenge the validity of the search warrant or the manner in which it was executed. We nonetheless note that police were executing a court-authorized "no knock" search warrant to highlight potential officer safety concerns associated with detaining persons who had just left the target premises.

A-3724-17T2

The affidavit in support of the warrant application included information about several "controlled buys" involving codefendant Davis, who was known to live in the targeted apartment. Although defendant was not personally involved in those drug transactions, he was specifically mentioned in the search warrant affidavit. For example, the affiant who applied for the warrant, Detective Athanasios Mikros, attested in the application that he personally knew that defendant was a high-ranking member of the Haitian Posse street gang. The affidavit also included information from a confidential informant who stated that defendant lived with Davis. The affidavit further asserted that on several occasions during the course of the investigation, police officers observed defendant and Davis entering and exiting the apartment and both appeared to have their own set of keys.

As the police were preparing to execute the raid, Detective Mikros observed defendant and another person leave the apartment and cross Route 1 and 9. Detective Mikros instructed Officers Figueiredo and Xavier by radio to detain defendant and the other individual. Those two officers, who were in a marked patrol car, had previously been instructed by Mikros to remain near the target apartment to support the law enforcement operation. Officers Figuerido and Xavier were stationed across Route 1 and 9 and saw defendant cross the

7

highway.  The ensuing detention, however, occurred more than a block from the apartment.  The two-family house, moreover, was not within the officers' line of sight when they initiated the stop.

Officer Figuerido testified that as he approached defendant, he immediately detected the smell of marijuana.  The officer conducted a pat down of defendant, revealing a set of keys.  By this time, the narcotics raid had begun.  When contraband was found in the apartment, Detective Mikros instructed Officer Fiueredo by radio to place defendant under arrest, at which time the keys were seized as evidence.[4]  The trial judge noted in his opinion that Officer Figueiredo's testimony at the motion to suppress was presented in a "thoughtful, competent, thorough, and professional manner," and the judge found him to be "a highly credible witness."

## B.

When reviewing a trial court's decision in a motion to suppress, we defer to the court's factual findings so long as they are "supported by sufficient credible evidence in the record."  State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)).  "By contrast, the task of appellate courts generally is limited to reviewing issues of law.  Because legal

---

[4] It was later confirmed that one of the keys unlocked the door to the apartment.

issues do not implicate the fact-finding expertise of the trial courts, appellate courts construe the Constitution, statutes, and common law 'de novo—"with fresh eyes" . . . .'" State v. S.S., 229 N.J. 360, 380 (2017) (quoting State v. Morrison, 227 N.J. 295, 308 (2016)). We need not defer, therefore, to a trial judge's interpretive conclusions "unless persuaded by their reasoning." Morrison, 227 N.J. at 308 (citing State v. Goodwin, 224 N.J. 102, 110 (2016)).

Applying these basic principles to the record before us, we affirm the denial of defendant's Fourth Amendment suppression motion substantially for the reasons set forth in the trial court's comprehensive and cogent written opinion. We note, first, that the trial court correctly concluded that defendant's detention was not automatically authorized as incident to the execution of the search warrant. The United States Supreme Court held in Michigan v. Summers that a warrant to search a premises for contraband "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. 692, 705 (1981). In Bailey v. United States, however, the Court placed geographic limits on the scope of the Summers doctrine, holding that the Summers categorical rule authorizing detention did not apply because Bailey was not in "the immediate vicinity of the premises to be searched" when he was stopped. 568 U.S. 186, 200–01 (2013). In the case

before us, the trial court likewise found that defendant's detention was initiated only after he was outside the spatial constraint established in Bailey. Ibid. The State has not cross-appealed that determination.

The trial court correctly recognized, however, that its conclusion that the detention was not authorized under the Summers doctrine does not necessarily mean the detention was unlawful. Rather, it means the onus is on the State to establish an independent basis upon which to justify the detention.

The Supreme Court in Bailey recognized that Terry's investigatory stop rule can provide an independent lawful basis for detention. Id. at 202. In that instance, the Court expressed no view on whether there was reasonable suspicion to justify a Terry stop, leaving that fact-sensitive question to be addressed by the Court of Appeals on remand. Ibid. The Court of Appeals ultimately found there was a lawful basis to detain Bailey under the Terry stop-and-frisk doctrine. United States v. Bailey, 743 F.3d 322, 335 (2d Cir. 2014). In reaching that conclusion, the court noted there is no bar to considering "ownership or occupancy of premises to be searched in making a reasonable suspicion assessment under Terry. Indeed, such a conclusion would be at odds with Supreme Court precedent instructing that reasonable suspicion be determined from the totality of circumstances." Ibid. In other words, in

10

deciding whether reasonable suspicion exists to justify an investigative detention under Terry, a reviewing court may consider the facts that had convinced a judge to issue the search warrant.

Applying those principles to the case before us, we conclude there was reasonable suspicion to believe that defendant was involved in criminal activity outlined in the search warrant. Detective Mikros was the affiant who prepared the search warrant application and thus was personally aware of the facts that linked defendant to the apartment. Mikros, moreover, observed defendant leaving that apartment moments before the raid. The detective also had reason to believe defendant was a high-ranking member of a local street gang and attested to that circumstance in the warrant application. Considering the totality of these circumstances, Detective Mikros was aware of facts constituting a reasonable and articulable suspicion sufficient to justify a Terry stop and frisk.[5] See State v. Privott, 203 N.J. 16, 28 (2010) (deeming an officer's knowledge that

_____

[5] We add that in this case, the officers smelled the odor of marijuana, permitting the immediate escalation of the police-citizen encounter from a Terry stop to an arrest. See infra note 6 and accompanying text. Given that the police would have been permitted to conduct a search incident to arrest, which is a more thorough and expansive search than the limited pat down authorized, we conclude the pat down search would have been lawful in this case even if there was no basis to suspect that defendant was carrying a weapon.

defendant was associated with violent street gangs a relevant circumstance supporting an investigatory stop).

Furthermore, we reject defendant's contention that the officers who actually initiated the stop were required to be personally aware of the facts constituting reasonable suspicion. Officers Figueiredo and Xavier had been directed to detain defendant by Detective Mikros. As the trial court aptly noted in its written opinion, "[i]t is understood that 'effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.'" State v. Crawley, 187 N.J. 440, 457 (2006) (quoting United States v. Robinson, 536 F.2d 1298, 1299 (9th Cir. 1976)).

Because the trial court correctly found that Officers Figueiredo and Xavier were acting on Detective Mikros's instructions and thus had lawful authority to initiate a Terry stop and frisk, we need not address the State's alternate argument that the officers detected the smell of marijuana on defendant's person—and

therefore had grounds to arrest—even before they effectuated a <u>Terry</u> stop.[6]

Rather, we view the smell of marijuana as further justification for defendant's arrest following the initial lawful detention that was based on Detective Mikro's instruction. <u>See</u> <u>Nishina</u>, 175 N.J. at 517 ("New Jersey courts have recognized that the smell of marijuana itself constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.'" (alteration in original) (quoting <u>State v. Vanderveer</u>, 285 N.J. Super. 475, 479 (App. Div. 1995))). Although the smell of marijuana by itself established probable cause to arrest defendant, we believe that even without the odor of marijuana, the officers had probable cause to arrest when they were advised by Detective Mikros that controlled substances had been found in the apartment defendant had just left. In these circumstances, the seizure of the key found on defendant's person was lawful as a search incident to the arrest. <u>See</u> <u>State v.</u>

---

[6] The State argues that the officers detected the odor of marijuana as they approached defendant to conduct a "field inquiry." <u>See</u> <u>State v. Nishina</u>, 175 N.J. 502 (2003) (explaining that "[a] field inquiry 'is a limited form of police investigation that . . . may be conducted "without grounds for suspicion"'" provided the civilian with whom the officer is conversing reasonably believes that he or she is free to walk away without answering any question (quoting <u>State v. Rodriguez</u>, 172 N.J. 117, 126 (2002))). Given that Officers Figueiredo and Xavier had been given explicit orders from Detective Mikros to detain defendant, we do not believe the officers were about to initiate a consensual field inquiry when they smelled the odor of marijuana.

Dangerfield, 171 N.J. 446, 463–64 (holding police following a valid custodial arrest for a criminal offense may conduct a search of the person of the arrestee solely on the basis of the lawful arrest).

III.

We next address defendant's contention that the trial court erred by admitting into evidence medical-related correspondence seized from the apartment during the raid. These documents bore defendant's name and thus helped to link him to the apartment. The State does not dispute this discoverable material was not turned over in a timely manner as required by R. 3:13-3(b). The issue before us, therefore, is not whether there was a discovery violation, but rather whether the remedy fashioned by the trial court was appropriate to safeguard defendant's right to a fair trial.

The circumstances of the discovery violation were revealed during an N.J.R.E. 104 hearing convened by the trial court. At that hearing, Union County Detective Jon Klimaszewski testified that in response to a defense discovery request for all correspondence found in one of the bedrooms in the apartment, he visited the Elizabeth Police Department to obtain what he believed to be a complete set of documents seized from the apartment. As it turns out, the Elizabeth Police Department failed to provide Klimaszewski with

14

approximately twenty pages of medical documents that had been found in the apartment while executing the search warrant.

On or about July 24, 2017, while reviewing all of the evidence as part of the preparation for the upcoming trial, Detective Klimaszewski realized these documents had not been provided to him during his first visit to the police department. He immediately prepared a supplemental report and the prosecutor informed defense counsel of the additional material that had not previously been disclosed. On Thursday, July 27, 2017, defense counsel visited the Union County Prosecutor's Office and was provided access to the documents.[7]

On Tuesday, August 1, 2017, just before opening arguments were scheduled, defense counsel made an oral motion in limine to exclude the twenty pages of medical documents from evidence. The trial court denied the motion to exclude the documents and instead offered to adjourn the trial for a day to give counsel further opportunity to review the documents. Counsel declined the adjournment, explaining, "I don't need the time to review the documents."

---

[7] The State acknowledges that it thereafter failed to produce copies of the documents for defense counsel despite his request that they be scanned and sent to him electronically. Thus, while defense counsel had an opportunity to read the documents five days before opening arguments, he was not provided with a copy of the documents until the morning of trial.

Counsel argued the mere existence of the documents bearing defendant's name was prejudicial.

Based on the testimony and arguments presented at the N.J.R.E. 104 hearing, the trial court found the State had not acted in bad faith.  The judge further noted that defense counsel had the opportunity to see the documents five days prior to opening arguments, which the judge characterized as "well in advance" of trial.  The court concluded that although the prosecutor's office should have turned over the records sooner, defense counsel should have made the in limine motion when he first learned about the documents, not on the morning of scheduled opening arguments.  The court thereupon denied defendant's request to exclude the medical documents and instead ordered the State to not introduce them until after lunch so that defense counsel would have another opportunity to review the material during the break.

We begin our review of the trial court's ruling by reaffirming the importance of timely and complete discovery.  As the New Jersey Supreme Court explained in State v. Scoles, "[t]o advance the goal of providing fair and just criminal trials, we have adopted an open-file approach to pretrial discovery in criminal matters post-indictment."  214 N.J. 236, 252 (2013).  "Once an indictment has issued," the Court explained, "a defendant has a right to

automatic and broad discovery of the evidence the State has gathered in support of its charges."  Ibid. (citing R. 3:13-3).

When a party fails to comply with its obligations, the discovery rule expressly states that the court may "grant a continuance or delay during trial" or "enter such other order as it deems appropriate."  R. 3:13-3(f).  A court's failure to take appropriate action to remedy a discovery violation can implicate the defendant's right to a fair trial.  State v. Clark, 347 N.J. Super. 497, 507, 510 (App. Div. 2002).

In State v. Marshall, the Court made clear "[t]he choice of sanctions appropriate for discovery-rule violations is left to the broad discretion of the trial court."  123 N.J. 1, 134 (1991) (citing State v. Torro, 229 N.J. Super. 215, 223 (App. Div. 1988), disapproved of on other grounds by State v. Velez, 119 N.J. 185, 187 (1990)); see also State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009), aff'd, 201 N.J. 229 (2010) (reviewing the trial judge's discovery ruling for an abuse of discretion).

As a general proposition, appellate courts "defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the mark or is not 'based on a mistaken understanding of the applicable law.'"  State ex rel. A.B., 219 N.J. 542, 554 (2014) (quoting Pomerantz Paper Corp. v. New

17

Cmty. Corp., 207 N.J. 344, 371 (2011)). "An abuse of discretion 'arises on demonstration of manifest error or injustice,' or when 'there has been a clear error in judgment[.]'" Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019) (first quoting Hisenaj v. Keuhner, 194 N.J. 6, 20 (2008), then quoting State v. Brown, 170 N.J. 138, 147 (2001)). Said differently, an abuse of discretion occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Applying these legal principles to the discovery violation that occurred in this case, we conclude that the trial court did not abuse its discretion in deciding not to impose the extreme sanction of excluding the medical correspondence found during the execution of the search warrant. Defense counsel had been alerted to the existence of the documents bearing defendant's name five days before the trial started. The five-day notice of the documents afforded defense counsel sufficient time to adjust his trial strategy, protecting defendant's right to a fair trial.

Furthermore, as we have noted, counsel had been provided timely discovery concerning other trial evidence that linked defendant to the apartment, including the key found on defendant's person and trial testimony from two witnesses who claimed that defendant and codefendant Davis lived together in the apartment. In these circumstances, we do not believe that defendant suffered undue prejudice or otherwise was deprived the right to a fair trial.

We note that defendant in his appellate brief argues the belatedly supplied documents "altered the landscape upon which Defendant had made his decisions to proceed to trial and his trial preparations." By referring to his decision to "proceed to trial," defendant intimates, without explication, that he might have pled guilty had the medical correspondence been disclosed in a timely fashion. So far as we can tell, defendant did not make this argument before the trial court. Nor has defendant presented any evidence or proffer, whether by certification or even by argument of counsel, that he would have pled guilty pursuant to a plea agreement had this material been disclosed in a timely fashion.

Finally, with respect to the discovery issue, we note that the trial court lamented that this situation occurs all too frequently with large urban police departments. The court stated:

> It's very clear that these are documents that in the ordinary course, had the prosecutor been aware of them,

A-3724-17T2

would have turned them over. This happens particularly when you're dealing with a large urban police department like Elizabeth. There's nothing novel about this. It is unfortunate and regrettable every time it happens.

We take this opportunity to emphasize that such departments are by no means exempt from the discovery rules. Our case law makes abundantly clear that once "a case is referred to the prosecutor following arrest by a police officer as the initial process, or on a complaint by a police officer, . . . local law enforcement is part of the prosecutor's office for discovery purposes." State v. W.B., 205 N.J. 588, 608 (2011) (citations omitted) (citing State v. Winne, 12 N.J. 152, 171 (1953)). Therefore, it is the prosecutor's responsibility not just to report discovery violations promptly, as happened in this case, but to prevent violations from occurring in the first place. We thus expect that hereinafter, all discoverable material retained by a police department after execution of a search warrant will be turned over to the prosecutor so that the prosecutor can provide it to defense counsel when discovery is due under R. 3:3-13(b).

IV.

We next address defendant's sentencing contentions. The State concedes that the trial court was required to merge defendant's conviction on count one into his conviction on count three. See State v. Selvaggio, 206 N.J. Super. 328,

330 (App. Div. 1985) ("[C]onvictions for possession merge into . . . convictions for the simultaneous possession with intent to distribute the same substance."). Furthermore, the sentencing court improperly imposed a concurrent extended term on the conviction for count one under N.J.S.A. 2C:43-6(f) even though that offense is not eligible for an extended term under that statutory provision. Accordingly, it is necessary to vacate the illegal sentence and remand to impose a lawful sentence.

Defendant also argues that his sentence of eight years imprisonment with a four-year period of parole ineligibility is excessive. He acknowledges that the trial court was required to impose an extended term as a repeat offender under N.J.S.A. 2C:43-6(f) due to his prior fourth-degree conviction for possession of marijuana with intent to distribute. See State v. Irrizary, 328 N.J. Super. 198, 202 (App. Div. 2000) ("The extended sentence imposed by N.J.S.A. 2C:43-6(f) is mandatory"). Accordingly, the court was required to impose a state prison sentence within the extended term range for his current third-degree conviction—five to ten years—and a term of parole ineligibility of one third to one half of the imposed sentence or three years, whichever is greater. N.J.S.A. 2C:43-6(f). "Where, within that range of sentences, the court chooses to sentence a defendant remains in the sound judgment of the court" subject to

21

applicable aggravating and mitigating factors. State v. Pierce, 188 N.J. 155, 169 (2006). In this instance, the court did not impose the maximum possible prison and parole-ineligibility term, choosing instead to impose an eight-year term of imprisonment with a four-year term of parole ineligibility.

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). An appellate court "does not sit to substitute its judgment for that of the trial court," State v. O'Donnell, 117 N.J. 201, 215 (1989). We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." Ibid. (citing State v. Jarbath, 114 N.J. 394, 400–01 (1989)). In other words, a sentence challenged on appeal must be affirmed unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

Applying these general sentencing principles to the record before us, we conclude the trial court acted within the ambit of its discretion in imposing an eight-year prison sentence with a four-year term of parole ineligibility. The sentencing judge, who heard the trial and thus was familiar with the offense conduct, considered both the nature and circumstances of the offense and defendant's background, including his four prior convictions. The court found aggravating factors three (the risk that defendant will commit another offense), six (the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted), and nine (the need to deter). N.J.S.A. 2C:44-1(a)(3), (6), (9). Those aggravating circumstances are supported by credible evidence in the record. State v. Dalziel, 182 N.J. 494, 505 (2005) (citing Roth, 95 N.J. at 356–64). The court found no mitigating factors and concluded that the aggravating factors substantially outweighed the (nonexistent) mitigating factors.

We note that defendant on appeal claims there are discrepancies between the judgment of conviction and the transcript of the sentencing court's oral decision. Defendant argues, for example, the court at the sentencing hearing did not find on the record that aggravating factor six applies. Our review of the transcript of the sentencing hearing contradicts defendant's appellate assertion.

The record does show that the judge originally indicated he would not consider aggravating factor six. Later in the course of the hearing, however, the judge reconsidered that decision and concluded aggravating factor six applies. Accordingly, the judgment of conviction accurately reflects the trial court's ultimate oral decision with respect to this aggravating factor, which is amply supported by defendant's significant criminal history.

Defendant also contends on appeal that when the sentencing judge concluded that the aggravating factors substantially outweigh the mitigating factors, the judge in his oral decision failed to state that he was "clearly convinced" of that determination. The judgment of conviction, in contrast, includes this language. See State v. Williams, 310 N.J. Super. 92, 98 (App. Div. 1998) ("[T]he sentencing judge must be 'clearly convinced that the aggravating factors substantially outweigh the mitigating factors' before imposing a parole disqualifier." (quoting State v. Dunbar, 108 N.J. 80, 92 (1987))). This discrepancy is of no moment because, as we have noted, defendant was subject to an automatic, mandatory term of imprisonment and parole indelibility pursuant to N.J.S.A. 2C:43-6(f) based on his prior possession-with-intent-to-distribute conviction. The sentencing judge, therefore, was not required to make a finding that he was clearly convinced the aggravating factors outweigh the

mitigating factors under N.J.S.A. 2C:43-6(b) before imposing a period of parole ineligibility.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION